697 A.2d 960

KATHLEEN SMITH, PLAINTIFF, v. PAUL LOPEZ, DEFENDANT.

Superior Court of New Jersey
Chancery Division
Family Part
Essex County

Decided November 13, 1996.

*Howard Felsenfeld,* for plaintiff.

*Seth Josephson,* for defendant.

DELEHEY, J.S.C.

This case presents a simple issue: Following the auction of assets at a sheriff's sale, how is the amount of credit against the

judgment determined? By the highest bid at the sheriff's sale? By the fair market value of the items sold? Or, by some other guideline or formula?

Defendant-judgment debtor, Paul Lopez, seeks credit predicated upon the fair market value of his automobile sold at a sheriff's sale. Plaintiff-judgment creditor, Kathleen Smith, asserts that defendant's credit against the judgment is limited to the auction price at the sheriff's sale.

This case arises from proceedings in the Family Part. On May 6, 1994, the court entered an order requiring defendant to pay plaintiff $20,495.05 to satisfy child support arrearages and credit card indebtedness. On November 30, 1994, the order was reduced to a judgment. In December, 1994, pursuant to a writ of execution, defendant's 1990 Nissan 300ZX was seized and auctioned at a sheriff's sale.

At the sheriff's sale there was only one bidder—plaintiff's attorney, who on behalf of plaintiff purchased defendant's automobile for $100. The automobile was encumbered by a $5,406 obligation to Chemical Bank. Following purchase of the vehicle at the sheriff's sale, plaintiff sold the car to Acres Auto, a used car dealership, for $7,400. After payment of the Chemical Bank lien ($5,406) and attorneys fees and costs ($600), she realized a $1,394 net recovery.

The court accepts *arguendo* defendant's contention that the fair market value of the automobile at the time of the sheriff's sale was $13,750. Defendant now contends that he should be credited in the amount of $8,344, which is the difference between the fair market value of the automobile ($13,750) and payments made to satisfy the lien ($5,406). Plaintiff contends that defendant's credit is limited to $100, the purchase price at the sheriff's sale.

The judicial process does not require a fair market value appraisal of an item prior to a sheriff's sale. Only in those rare instances where a judgment debtor seeks the statutory exemption of $1,000 is an appraisal required. The appraisal process is not

designed to assess true and intrinsic value, but only to inventory those items subject to the statutory exemption. *N.J.S.A.* 2A:17–19 to 25. In addition, courts have recognized that sheriff's sales rarely produce fair market value bids.

> The theory behind the public sale of mortgaged premises is to afford special protection to the debtor-owner, first by insuring the return of any equity, represented by the surplus of the sale over the mortgage debt, and second by effectively establishing the fair market value of the mortgaged premises to avoid oppressively high deficiency judgments.... However, foreclosure sales rarely, if ever, bring the fair market value of the foreclosed property.
>
> [*Carteret Savings & Loan Ass'n. v. Davis,* 105 *N.J.* 344, 351, 521 *A.*2d 831 (1987).]

Cognizant that sheriff's sales seldom produce fair market value bids, the Legislature created a statutory scheme that permits certain foreclosed debtors to dispute the amount of the deficiency by demonstrating fair market value of the property foreclosed. *See N.J.S.A.* 2A:50–3 and *N.J.S.A.* 2A:50–22. The court is empowered to determine and thereafter credit the mortgagor the difference between the debt owed and the fair value of the real property regardless of the price obtained at sheriff's sale. *Carteret,* 105 *N.J.* at 351–352, 521 *A.*2d 831.

Fulfillment of the statutory scheme designed to protect mortgage debtors, *N.J.S.A.* 2A:50–3, is embodied in several reported cases, among them: *Citibank, N.A. v. Errico,* 251 *N.J.Super.* 236, 597 *A.*2d 1091 (App.Div.1991); *Morsemere Fed. Sav. & Loan Ass'n v. Nicolaou,* 206 *N.J.Super.* 637, 503 *A.*2d 392 (App.Div. 1986), and *RTC v. Berman Ind.,* 271 *N.J.Super.* 56, 637 *A.*2d 1297 (Law Div.1993).

In *Citibank* the defendant executed a $5.5 million note secured by a first mortgage against real property. Defendant defaulted and a judgment reflecting the debt plus interest and costs was entered in the amount of $7.1 million. Plaintiff, Citibank, sold the mortgaged property to the lone bidder at public auction for $5.9 million. Earlier appraisals had fixed the fair market value of the premises at $9.5 million. Citibank then sued defendant seeking a deficiency judgment. Defendant claimed that he was entitled to credit for the fair market value, not the amount produced at the

single-bidder sheriff's sale. Re-asserting its conclusions in *Mor-semere, supra,* the court applied equitable principles to impose a fair market value credit thereby preventing a windfall. *Citibank, supra,* 251 *N.J.Super.* 236, 597 *A.*2d 1091.

In *Morsemere* the court, noting the provisions of *N.J.S.A.* 2A:50–3 that gives a mortgagor a right to dispute a claim of deficiency and determine the fair market value of the premises foreclosed, asserted its inherent equitable authority to bar double recovery or windfall where a judgment creditor had purchased mortgaged property at a foreclosure sale. *Morsemere, supra,* 206 *N.J.Super.* at 643–644, 503 *A.*2d 392. Similarly, in *RTC* the court permitted the defendant to obtain a fair market value credit when property appraised at $375,000 was sold at a sheriff's sale for $100. *RTC, supra,* 271 *N.J.Super.* 56, 637 *A.*2d 1297.

The law's concern for protecting both creditor and debtor is reflected in commercial secured transaction cases as well. In *Security Sav. Bank v. Tranchitella,* 249 *N.J.Super.* 234, 592 *A.*2d 284 (App.Div.1991), the court considered a debtor's entitlement to credit following a creditor's failure to dispose of collateral in a "commercially reasonable" manner as required by the Uniform Commercial Code, *N.J.S.A.* 12A:9–504(3). Although the Uniform Commercial Code does not expressly define what is commercially reasonable, the court found guidance in *N.J.S.A.* 12A:9–507(2):

> The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either sells the collateral in the usual manner in any recognized market therefor, or if he sells at the price current in such market at the time of his sale, or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner.
>
> [*Id.* at 239, 592 *A.*2d 284.]

In *Security Sav. Bank* the court suggested a number of factors, including the specific nature of the collateral and its depreciated value, to be considered when determining whether the sale is commercially reasonable, but in the end the court recognized that "commercial reasonableness" should be viewed as a flexible con-

cept based upon a consideration of all of the factors presented in each case.

The instant matter does not involve the foreclosure of real property nor the sale of a repossessed, secured article. It is not governed by the express provisions of *N.J.S.A.* 2A:50–3 nor by *Article 9* of the Uniform Commercial Code. Plaintiff is not a secured judgment creditor. She is an unsecured judgment creditor who wants her money. That being so, what are her obligations to the judgment debtor?

Although statutes relating to foreclosure and secured transactions do not bind an unsecured judgment creditor, case law interpreting those statutes provides guidance. From those cases some rules emerge: (1) an arms length sale may serve as a basis for value; (2) a judgment creditor is obligated to act fairly in the disposition of assets, and (3) the court has equitable authority to preclude unjust enrichment in the form of windfall or double recovery.

■ Here, the court must consider two sales: The sheriff's sale of the automobile for $100 and plaintiff's subsequent sale of it for $7,400. The sheriff's sale was a sham. A single bidder, plaintiff's attorney, purchased the automobile for $100 (less than two percent of its value), hardly an arms length transaction. To restrict defendant to a $100 credit, as urged by plaintiff, would serve only the purposes of windfall and unjust enrichment, plaintiff having effected a double recovery (procurement of the automobile and virtually no reduction of the judgment debt). Thus, the court rejects plaintiff's contention that defendant's credit is limited to the $100 sheriff's sale price.

■ The second sale occurred after plaintiff acquired the vehicle at the sheriff's auction. Plaintiff sold the automobile to an auto dealer for $7,400. Defendant contends that plaintiff failed to obtain the fair market value which he asserts was $13,750. There are two types of unsecured judgment creditors, those who are comfortable and those who are in distress. A judgment creditor

who keeps the property may be deemed comfortable, there being no desire to convert the property to cash. A judgment creditor who sells the property in order to realize the money to which he is entitled may be deemed a judgment creditor in distress. The two should not be treated alike. The circumstances are different.

An unsecured judgment creditor who elects to keep the debtor's property must extend to the debtor full market value credit therefor, because he has appropriated to his own use an item that has fair market value to him. On the other hand, an unsecured judgment creditor who liquidates the debtor's assets is under no statutory obligation to the debtor; his only obligation is to act fairly and reasonably. If an unsecured judgment creditor is required to allow the debtor full market value, there is no incentive for the debtor to pay the judgment. Thus, the prospect of a sheriff's sale or a distress sale remains an inducement to a judgment debtor to satisfy his obligation.

An unsecured judgment creditor in distress (one who seeks to convert the debtor's property to money), although having no statutory obligation to the debtor, must nonetheless act fairly. "Fairly" does not mean procurement of fair market value that accompanies foreclosure actions nor the commercially reasonable value that accompanies secured transactions. So long as the sale of the debtor's property is made at arms length and the sale price falls within a broad range of prices that might be expected at a distress sale, the court will apply the distress sale price as the credit to which the debtor is entitled. Only if the transaction is unconscionable will the court set the sale price aside.

Here, plaintiff's desire was to convert the judgment to money. She did so by selling the automobile. Presumably, she sold the automobile for as much as she could obtain under the circumstances. Defendant argues that the vehicle had a fair market value of $13,750. That, of course, represents the cost to a purchaser on the open retail market. It does not represent its worth to a seller in distress. The automobile was sold for $7,400, or 54% of the fair market value that debtor ascribes to it.

The court concludes that plaintiff's sale of the vehicle was conducted fairly, and under the circumstances the price obtained was reasonable. Defendant cannot be heard to complain. After all, he had the option, before execution of the judgment, to sell the vehicle for the fair market value which he purports and satisfy the judgment. Instead, he chose to ignore the judgment, placing plaintiff in a distress situation that required her to execute on his property and obtain whatever money she could.

Plaintiff realized a net recovery of $1,394 (the sales price of $7,400 less $5,406 to satisfy the lien and $600 for attorneys' fees and costs). Accordingly, the court today enters its own order granting partial satisfaction of the judgment in the amount of $1,394.