999 A.2d 1204

MMU OF NEW YORK, INC., AS ASSIGNEE OF 200 OCEAN BOULE-VARD ASSOCIATES, L.P., PLAINTIFF–APPELLANT, v. GARY GRIESER, A/K/A GARY GREISER, A/K/A GARY GRISER, A/K/A GARY D. GRIESER, JR., DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted February 4, 2010—Decided August 4, 2010.

Before Judges SKILLMAN, FUENTES and SIMONELLI.

*Porzio, Bromberg & Newman,* attorneys for appellant (*Michael L. Rich,* of counsel and on the briefs; *Josh M. Mann,* on the briefs).

*Jules L. Rossi,* attorney for respondent.

The opinion of the court was delivered by

SKILLMAN, P.J.A.D.

The primary issue presented by this appeal is whether a judgment debtor is entitled to a fair market value credit for property that is executed upon and then purchased by a judgment creditor at a sheriff's sale for a nominal amount. We conclude that, even in the absence of express statutory authorization, a court has inherent equitable authority to allow a fair market value credit in order to prevent a double recovery by a judgment creditor against a judgment debtor. We also conclude that this inherent authority was properly exercised in the present case.

In October 1990, defendant Gary Grieser entered into a ten-year commercial lease for the second floor of a building in Long Branch with 200 Ocean Boulevard Associates (200 Ocean). In April 1991,

defendant filed a bankruptcy petition but failed to list 200 Ocean as a creditor or to identify the lease as an asset or liability. Following the filing of the bankruptcy petition, defendant discontinued paying rent but continued to occupy the leased premises until October 1991.

After defendant vacated the premises, 200 Ocean brought this action in the Law Division seeking past due rent as well as rent for the approximately nine years remaining on the term of the lease. 200 Ocean served defendant by publication and, after he failed to answer, obtained a default judgment against him for $1,630,481.69, representing unpaid rent for the entire ten-year term of the lease.

200 Ocean subsequently assigned the default judgment to MMU of New York (MMU), which was substituted as plaintiff in the action. Defendant filed numerous motions to vacate the default judgment, which were apparently based on his discharge in the bankruptcy proceeding, all of which were denied.

In 1996, defendant obtained title to a property in Monmouth Beach. In 2000, MMU levied an execution on the property to satisfy the default judgment and scheduled a sheriff's sale. Defendant filed an order to show cause to stay the sale and vacate the default judgment. The trial court denied defendant any relief and the sheriff's sale was allowed to proceed. On appeal, we affirmed the order memorializing this ruling in an unpublished opinion. *MMU of N.Y. v. Grieser,* No. A–4441–00T1 (May 3, 2002).

In September 2001, MMU purchased the Monmouth Beach property at the sheriff's sale for $100. The following month, MMU entered into a contract to sell the property to a third party for $1,200,500. MMU collected an additional $188,944 by executing upon six other properties owned by defendant. Thus, MMU eventually realized a total of $1,389,444 through its collection activities.

In April 2007, defendant filed a motion challenging the validity of the default judgment. The trial court denied this motion on the ground that defendant's failure to pay the rent on the leased premises and various conduct related to this litigation demonstrated "unclean hands" that precluded him from challenging the default judgment.

On appeal, we reversed this denial in an unpublished opinion. *MMU of N.Y., Inc. v. Grieser*, No. A–5904–06T3, 2008 WL 2122404 (May 21, 2008). Our opinion stated in part:

Defendant makes a reasonable argument that the landlord was not entitled to rent for the balance of the lease term because the landlord subsequently re-rented the premises and then sold it within two years. Defendant also asserts that the sums plaintiff has collected to date should have significantly reduced, if not satisfied, the balance due on the judgment, even if the judgment amount was proper in the first instance. Neither of these arguments should be precluded simply because defendant remained in the property for six months in 1991 without paying rent. Defendant's failure to pay rent in the first instance gave the landlord grounds for eviction and a money judgment, but has no bearing on defendant's claim that the landlord failed to mitigate its damages, and failed to properly account for the amounts already collected against the default judgment.

[Slip op. at 7.]

Accordingly, we remanded the case to the trial court to address these issues.

On remand, the trial court ruled that defendant was entitled to a reduction in the amount of the judgment based on 200 Ocean's re-leasing and then selling the premises after defendant vacated. Consequently, the court entered an order on July 18, 2008, which reduced the principal amount of the judgment to $384,759.60 "less rents received [from the] new tenant prior to December 10, 1993." The court further determined that MMU was entitled to $258,375 in interest on this amount, which resulted in an amended judgment for $643,134.60.

The court also ruled that defendant was entitled to a credit against this reduced judgment for the full amount MMU realized from its executions upon properties owned by defendant, including the $1,200,500 MMU realized from its sale of the Monmouth Beach property, which the court apparently determined was an accurate

reflection of fair market value. The parties stipulated that the total amount of these credits was $1,389,444. Because these credits exceeded the amount of the amended judgment by $746,309.40, in addition to discharging the judgment in MMU's favor, the court entered judgment in defendant's favor in that amount.

MMU filed a motion for reconsideration. The trial court granted reconsideration but reaffirmed the judgment in defendant's favor.

MMU appeals both from the judgment and the order on its motion for reconsideration. We affirm.

Initially, we note that MMU does not challenge the reduction in the amount of the judgment against defendant to $643,134.60. MMU also does not challenge defendant's entitlement to credits for the $188,944 it collected by executing upon the six other properties owned by defendant. All of MMU's arguments are directed solely at the part of the judgment that allowed defendant a fair market value credit of $1,200,500 based on the sale of the Monmouth Beach property to a third party.

MMU presents three arguments for reversal of this fair market value credit: (1) defendant's application for that credit was barred by laches; (2) a judgment debtor is not entitled to a fair market value credit for property that is executed upon and then purchased by a judgment creditor at a sheriff's sale for a nominal amount; and (3) even if defendant was entitled to a fair market value credit for the Monmouth Beach property, which would result in a discharge of the judgment entered against him, the trial court erred in entering an "affirmative money judgment" against MMU.

## I.

Laches may be "invoked to deny a party enforcement of a known right when the party engages in an inexcusable and unexplained delay in exercising that right to the prejudice of the other party." *Knorr v. Smeal,* 178 *N.J.* 169, 180–81, 836 *A.*2d 794

(2003). "Laches may only be enforced when the delaying party had sufficient opportunity to assert the right in the proper forum and the prejudiced party acted in good faith believing that the right had been abandoned." *Id.* at 181, 836 *A.*2d 794. Thus, the determination whether a claim or defense should be barred by laches requires a close examination of the facts pertinent to application of this doctrine.

· [3, 4] MMU did not raise laches as a defense to defendant's claim to a fair market value credit for the amount MMU realized from the sale of the Monmouth Beach property until it filed a motion for reconsideration of the judgment in defendant's favor. A motion for reconsideration is not an appropriate vehicle for assertion of new defenses. *Lahue v. Pio Costa,* 263 *N.J.Super.* 575, 598, 623 *A.*2d 775 (App.Div.), *certif. denied,* 134 *N.J.* 477, 634 *A.*2d 524 (1993). Moreover, because laches was raised for the first time by a motion for reconsideration, the record relevant to this defense is incomplete. We note, however, that defendant alleges without contradiction that the accounting MMU provided in 2007 indicated that defendant was entitled to a credit for the $1,200,500 realized from that sale. In addition, MMU's counsel seemed to indicate at the October 31, 2008 oral argument that defendant was entitled to this credit. Under all these circumstances, we conclude that MMU is not entitled to assert the defense of laches at this late date.

## II.

We turn next to MMU's argument that defendant is not entitled to a credit for the fair market value of the Monmouth Beach property MMU executed upon and then purchased for a nominal amount at a sheriff's sale. MMU argues that the right to a fair market value credit must be established by statute and that the statutory provisions governing executions do not authorize such a credit. *See N.J.S.A.* 2A:17-1 to -83. MMU contrasts the statutory provisions governing mortgage foreclosures, which specifically allow a fair market value credit if a mortgagee seeks a

deficiency judgment, and the statutory provisions governing execution sales, which do not include express authorization for a fair market value credit.

However, we have previously recognized that, even in the absence of express statutory authorization, a court has inherent equitable authority to allow a fair market value credit in order to prevent a double recovery by a creditor against a debtor.

In *Morsemere Federal Savings & Loan Association v. Nicolaou,* 206 *N.J.Super.* 637, 503 *A.*2d 392 (App.Div.1986), a non-mortgage judgment creditor sought to intervene in a mortgage foreclosure action to assert a claim against surplus funds from the foreclosure sale, at which the judgment creditor was the successful bidder. *Id.* at 640–41, 503 *A.*2d 392. The fair market value of the property allegedly exceeded the amount required to satisfy both the foreclosure judgment and the non-mortgage judgment of the creditor seeking intervention. *Id.* at 641, 503 *A.*2d 392. We concluded that the non-mortgage judgment creditor was not entitled to intervene in the foreclosure action after final judgment had been entered. *Id.* at 641–42, 503 *A.*2d 392. However, we further concluded that even though that judgment creditor could not intervene, he could apply to the trial court to share in the surplus funds derived from the foreclosure sale. *Id.* at 642–43, 503 *A.*2d 392.

After deciding these procedural issues, we considered the issue directly relevant to this appeal: whether the judgment debtor was entitled to a credit for the fair market value of the property purchased by the non-mortgage judgment creditor at the foreclosure sale. *Id.* at 643–44, 503 *A.*2d 392. In concluding that the judgment debtor was entitled to such a fair market value credit, we stated:

> With respect to the holder of any bond or note given in connection with a mortgage, who is also the purchaser at the foreclosure sale, we note that *N.J.S.A.* 2A:50–3 gives a mortgagor the right to dispute a claim of deficiency and determine the fair market value of the premises. A court of equity, on application to it, could well apply the same deficiency rule as contained in *N.J.S.A.* 2A:50–3 to the situation presented here....

... Although *N.J.S.A.* 2A:50–3 does not by its express terms extend to a subsequent judgment creditor, we must consider nonetheless whether overriding equitable considerations exist, or whether there is a discernable probable legislative intent. Where property is sold to a holder of the subsequent obligation, by analogy to and in accord with the spirit of *N.J.S.A.* 2A:50–3, the debtor in the foreclosure action should be entitled to show the fair market value of the property and obtain a credit against the amount due on the judgment. Likewise, we see no reason why a court of equity should not condition its award of relief to an applying creditor to prevent a possible double recovery or windfall, where the judgment creditor has purchased the property. A court of equity has the inherent power to prevent a potential double recovery or windfall to the judgment creditor who not only may profit on the purchase of the property at the foreclosure sale (if purchased for less than fair market value), but who also seeks to obtain satisfaction of his judgment.

[*Id.* at 644–45, 503 A.2d 392 (citations and footnote omitted).]

In *Citibank, N.A. v. Errico,* 251 *N.J.Super.* 236, 597 A.2d 1091 (App.Div.1991), we reaffirmed the conclusion reached in *Morsemere* that a court has inherent equitable authority, even in the absence of express statutory authorization, to allow a fair market value credit in order to prevent a double recovery by a judgment creditor against a judgment debtor. *Citibank* was a deficiency action brought by a bank following a final judgment of foreclosure and foreclosure sale at which the bank purchased the subject property. *Id.* at 240, 597 A.2d 1091. The mortgagor defended the action on the ground that no deficiency existed because the fair market value of the property exceeded the amount of the judgment. *Id.* at 240–41, 597 A.2d 1091. This defense raised a choice of law issue. *See id.* at 241–43, 597 A.2d 1091. The governing New York statute provided a fair market value credit to a mortgagor of commercial property, but the applicable New Jersey statute did not provide a fair market value credit upon foreclosure of commercial property. *Id.* at 241, 597 A.2d 1091. We resolved the choice of law issue in favor of application of New York law. *Id.* at 243–46, 597 A.2d 1091.

In addition, relevant to this appeal, we concluded, as an alternative ground for our decision, that even if New Jersey law applied, equity would allow a fair market value credit to the mortgagor, even though the governing New Jersey statute expressly exempt-

ed mortgages secured by commercial properties from the statutory provision authorizing such a credit:

> Although *N.J.S.A.* 2A:50–2.3 was amended to exempt mortgages secured by notes for business and commercial properties from the fair market credit provision, we find nothing which precludes a court from applying equitable principles to impose a fair market value credit to prevent a windfall or where circumstances require equitable relief in the interests of justice. As we have noted, the Chancery Division applied equitable principles in conditioning relief on a fair market value hearing[.] An equity court has the inherent power to prevent a potential double recovery or windfall to a judgment creditor.
>
> [*Id.* at 247, 597 *A.*2d 1091 (citations omitted).]

Subsequent to *Morsemere* and *Citibank,* a trial court also recognized the inherent equitable authority of a court, even in the absence of express statutory authorization, to allow a fair market value credit to a judgment debtor whose property was sold to the judgment creditor at an execution sale. In *Smith v. Lopez,* 304 *N.J.Super.* 26, 30–34, 697 *A.*2d 960 (Ch.Div.1996), the court concluded, relying upon *Morsemere, Citibank* and the former *N.J.S.A.* 12A:9–504(3) (currently *N.J.S.A.* 12A:9–610(b)), which requires disposal of collateral by a creditor to be "commercially reasonable" in a secured transaction governed by the Uniform Commercial Code, that the judgment debtor was entitled to a credit for either the property's fair market value, if the property was retained by the judgment creditor, or to the amount realized by the judgment creditor in a sale of the property to a third party. In reaching this conclusion, the court stated:

> [This case] is not governed by the express provisions of *N.J.S.A.* 2A:50–3 nor by *Article 9* of the Uniform Commercial Code. Plaintiff is not a secured judgment creditor. She is an unsecured judgment creditor who wants her money. That being so, what are her obligations to the judgment debtor?
>
> Although statutes relating to foreclosure and secured transactions do not bind an unsecured judgment creditor, case law interpreting those statutes provides guidance. From those cases some rules emerge: (1) an arms length sale may serve as a basis for value; (2) a judgment creditor is obligated to act fairly in the disposition of assets, and (3) the court has equitable authority to preclude unjust enrichment in the form of windfall or double recovery.
>
> [*Id.* at 32, 697 *A.*2d 960.]

We also note that, although the right of a judgment debtor to a fair market value credit after an execution sale to the judgment

creditor appears to be governed by statute in some other jurisdictions, *see, e.g., First Fed. S & L Ass'n v. Keisling,* 746 A.2d 1150, 1155 (Pa.Super.Ct.2000), jurisdictions that do not have an express statutory provision dealing with this subject have also recognized a judgment debtor's entitlement to a fair market value credit. *See, e.g., Jones v. Greenlee Constr. Co.,* 526 *So.*2d 1012, 1013 (Fla.Dist.Ct.App.1988); *Yellow Creek Hunting Club, Inc. v. Todd Supply, Inc.,* 145 *A.D.*2d 679, 535 *N.Y.S.*2d 222, 223 (1988); *Wandschneider v. Bekeny,* 75 *Misc.*2d 32, 346 *N.Y.S.*2d 925, 931–32 (Sup.Ct.1973); *see generally* 30 *Am.Jur.2d Executions and Enforcement of Judgments* § 263 (2005) (noting that "[e]ven when deficiency judgment legislation does not apply, as a matter of general policy to protect property owners, a judgment debt may be reduced by the reasonable or fair market value of the property at the time of the execution sale").

MMU does not dispute that the $1,200,500 for which it sold the Monmouth Beach property shortly after the execution sale represented its fair market value at the time. Thus, MMU would obtain an unconscionable windfall if it were allowed to retain that $1,200,500 while only giving defendant credit for the $100 it paid to purchase the property at the sheriff's sale. We are satisfied for the reasons expressed in *Morsemere, Citibank,* and *Smith* that the trial court correctly concluded that it had the inherent equitable authority to prevent this windfall by allowing defendant a credit for the amount received by MMU in its sale of the property to a third party.

### III.

Lastly, we consider MMU's argument that even if defendant is entitled to a fair market value credit for his Monmouth Beach property that would result in a discharge of the judgment entered against him, the trial court erred in entering a money judgment in defendant's favor in the amount by which that credit, together with the credits for defendant's other properties executed upon by MMU, exceeded the amount of the amended judgment.

In support of this argument, MMU relies upon the rule that "a mortgagor has no right to an accounting for a surplus when a mortgagee bids in a nominal value and then does not seek a deficiency action against the mortgagor." *Sovereign Bank, FSB v. Kuelzow,* 297 *N.J.Super.* 187, 194, 687 *A.*2d 1039 (App.Div.1997). However, the parties' rights in a mortgage foreclosure action are governed by statute. *See 79–83 Thirteenth Ave., Ltd. v. DeMarco,* 44 *N.J.* 525, 529–34, 210 *A.*2d 401 (1965).

In contrast, a judgment creditor's efforts to satisfy the judgment by execution upon the debtor's property is subject to the court's inherent equitable authority "to prevent a potential double recovery or windfall to the judgment creditor[.]" *Morsemere, supra,* 206 *N.J.Super.* at 645, 503 *A.*2d 392. In our view, this equitable authority may extend to entry of an affirmative money judgment in the debtor's favor if necessary to prevent a windfall to the judgment creditor. We note in this respect that a judgment creditor may execute upon property with a fair market value that far exceeds the amount of the judgment. If the property is then purchased by the judgment creditor at a sheriff's sale for only a nominal amount, and the only relief granted to the judgment debtor were the discharge of the judgment, this would result in an unconscionable windfall to the judgment creditor.

Furthermore, the trial court ruled that defendant was entitled to a substantial reduction in the amount of the judgment in MMU's favor based on 200 Ocean's re-leasing of and then selling the premises after defendant vacated. In this circumstance, defendant was entitled to relief under *N.J.S.A.* 2A:17–44, which provides:

> *If any judgment or execution,* the execution having been recorded as required by law, by virtue whereof a sale shall be made of real estate, *shall be reversed,* such reversal shall only operate against the respondent on review, his heirs, executors and administrators, *to compel compensation to be made to the party aggrieved to the full value of the real estate so sold,* and shall not be given in evidence, or be of any force or avail against any bona fide purchaser under such judgment or execution; but such purchaser, his heirs and assigns, shall hold the real estate so bona fide purchased, notwithstanding such reversal, if it be after such purchase.

[Emphasis added.]

We conclude that the substantial reduction in the amount of the judgment in MMU's favor constituted a partial reversal of the original judgment which entitled defendant to "compensation ... to the full value of real estate so sold" to the extent that value exceeded the reduced amount of the amended judgment. This conclusion is supported by a comment to section 74 of the *Restatement of Restitution,* which states:

> Where a judgment is modified and a smaller amount awarded to the judgment creditor, if payment had been made in excess of the amount finally awarded, the judgment debtor is entitled to restitution of the excess under the same circumstances and from the same classes of persons as where the judgment is reversed. If property of the judgment debtor was seized on execution and sold to a purchaser, the purchaser is entitled to retain the property but the creditor is under a duty of restoring any excess received. If the property has been purchased by the judgment creditor, the sale will not be set aside but the judgment creditor will be required to restore the excess amount of net proceeds received by him unless such result would be unfair to the judgment debtor.

[*Restatement (First) of Restitution* § 74 cmt. m (1937).]

Thus, as the comment in *Restatement* makes explicit, the objective of *N.J.S.A.* 2A:17-44 remains the same whether a judgment has been reversed totally or only in part: to prevent the unjust enrichment of the judgment creditor at the expense of the judgment debtor. *See also Bernoskie v. Zarinsky,* 394 *N.J.Super.* 421, 425–27, 927 *A.*2d 149 (App.Div.2007). The trial court's entry of an affirmative money judgment in defendant's favor effectuated this legislative objective.

Accordingly, the amended judgment in defendant's favor is affirmed.