**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1441-17T3

WEST PLEASANT-CPGT, INC.,

    Plaintiff-Respondent/
    Cross-Appellant,

v.

U.S. HOME CORPORATION,
d/b/a LENNAR HOMES,

    Defendant-Appellant/
    Cross-Respondent.

_____

        Argued December 19, 2018 – Decided May 2, 2019

        Before Judges Fuentes, Vernoia and Moynihan.

        On appeal from Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-2417-11.

        Bruce D. Greenberg argued the cause for appellant/ cross-respondent (Lite DePalma Greenberg, LLC, attorneys; Bruce D. Greenberg, on the brief).

        Deborah A. Plaia argued the cause for respondent/ cross-appellant.

PER CURIAM

This appeal stems from a contract for the purchase, by defendant, U.S. Home Corporation d/b/a/ Lennar Homes (Home), of two contiguous land tracts, one owned by plaintiff, West Pleasant-CPGT, Inc. (West Pleasant) and the other by Four G's Land, LLC (Four G's). Pursuant to the contract terms, Home advanced $1,510,000 and West Pleasant delivered a note for $1,500,000 and a mortgage on its property to secure the note;[1] Four G's did not tender a mortgage on its property.

After Home voided the contract, alleging contract contingencies had not been met, ensuing contract disputes were resolved by an arbitration panel which concluded West Pleasant and Four G's were jointly and severally liable to Home for the full amount Home had advanced, including the escrowed advance, plus post-award interest. The arbitration award was confirmed and reduced to judgment against both West Pleasant and Four G's, jointly and severally; we affirmed.[2]

---

[1] An initial advance of $10,000 was held in escrow and was not included in the note and mortgage provisions of the contract.

[2] U.S. Home Corp. v. West Pleasant - CPGT, Inc., No. A-3985-07 (App. Div. Mar. 6, 2009). Our unpublished decision sets forth more fully the underlying facts of this case which we need not repeat here.

A-1441-17T3

Defendant filed a foreclosure complaint against West Pleasant. Twenty-one months later, West Pleasant filed a bankruptcy petition and obtained a stay of the foreclosure proceedings. Four G's filed for bankruptcy two months thereafter. After the Bankruptcy Court proceedings, which will hereafter be discussed in more detail, Home and West Pleasant entered into a consent order that, in part, dismissed West Pleasant's bankruptcy case. The Bankruptcy Court, in a separate proceeding, granted relief from the automatic stay Four G's previously obtained.

Home obtained a $1,697,180.90 judgment, plus fees and costs, against West Pleasant in the foreclosure action. Pursuant to a writ of execution, West Pleasant's land was sold at a sheriff's sale on January 25, 2011; Home purchased the tract for $100. Home had already executed upon its judgment against Four G's and purchased the Four G's tract at a sheriff's sale for $100 on December 7, 2010.

West Pleasant and Four G's filed an action in the Law Division in July 2011 seeking a credit from Home for the fair market value of their tracts in excess of Home's judgment as of the date of the sheriff's sales. In subsequent pleadings, West Pleasant added abuse of process claims against Home. Four G's assigned its rights to West Pleasant during the pendency of the litigation.

3

Home appeals from a final judgment entered by the trial court on October 19, 2017 vacating the judgment confirming the arbitration award and entering judgment against Home in favor of West Pleasant, individually and as assignee of Four G's, for a fair market value credit for the West Pleasant tract plus interest, contending the claim for credit was barred or otherwise precluded. West Pleasant cross-appeals from those portions of the October 19 judgment: denying it a credit for the difference between the value of the Four G's tract and the amount of Home's judgment and the value of wetlands mitigation credits which were realized by Home after it acquired the property; valuing the West Pleasant tract by reducing the number of lots; and dismissing with prejudice its abuse of process claim.

We affirm the trial court's dismissal of West Pleasant's abuse of process claim and the fair market value credit award for the Four G's property but reverse the court's fair market value credit award for the West Pleasant property.

I

Home argues West Pleasant's fair market value claim was precluded as a matter of law because West Pleasant did not move to set aside the sheriff's sale pursuant to Rule 4:65-5, or seek a fair market value claim in a deficiency action; Home claims these are the only procedures by which West Pleasant could have

pursued a claim. The trial court found "no provision in the Rule barring" a "debtor from pursuing an equitable remedy through the adoption of a fair market value credit." We review the trial court's interpretation of the law de novo. Serico v. Rothberg, 234 N.J. 168, 175 (2018); see also Manalapan Realty , L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) ("A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference.").

Rule 4:65-5 requires a sheriff to "deliver a good and sufficient conveyance" pursuant to a sheriff's sale of real estate "unless a motion for the hearing of an objection to the sale is served" prior to the delivery of the conveyance. We agree with the trial court that the Rule pertains only to objections to the sale of the property, not the value of the property vis-à-vis the amount of the judgment sought to be satisfied – which ratio is determinable, especially in cases where nominal consideration is paid – only after the sheriff's sale.

We also reject Home's argument that a fair market value credit can be claimed only at a deficiency hearing. After satisfying the "foreclosure first requirement" before pursuing an action on a bond or note for any deficiency, a mortgagee whose debt, including interest and costs, is not satisfied by the sale

5

in foreclosure proceedings, may institute a deficiency action within three months of the date of the sale.[3]  N.J.S.A. 2A:50-2.  The debtor may dispute the amount of the deficiency sued for by the mortgagee in an answer to the deficiency complaint, whereupon both parties may submit "evidence as to the fair market value of the mortgaged premises at the time of the sale thereof in the foreclosure action."  N.J.S.A. 2A:50-3.  The court is required to "determine the amount of [the] deficiency, by deducting from the debt secured the amount determined as the fair market value of the premises."  Ibid.

Those provisions, however, do not apply to business or commercial transactions.  N.J.S.A. 2A:50-2.3; Brunswick Bank & Tr. v. Affiliated Bldg. Corp, 440 N.J. Super. 118, 126 (App. Div. 2015).  Fair market value credits, although expressly recognized by N.J.S.A. 2A:50-3, are not limited in application only to a judgment creditor's pursuit of a deficiency judgment. Brunswick Bank & Tr. v. Heln Management LLC (Brunswick II), 453 N.J. Super. 324, 330 n.4 (App. Div. 2018).  We applied equitable principles, despite the N.J.S.A. 2A:50-2.3 commercial/business exemption,

> to impose a fair market value credit to prevent a
> windfall or where circumstances require equitable

---

[3]  The statute also provides, "if confirmation is or was required," the action must be commenced within three months "from the date of the confirmation of the sale of the mortgaged" property.  N.J.S.A. 2A:50-2.

> relief in the interests of justice. . . . An equity court has the inherent power to prevent a potential double recovery or windfall to a judgment creditor.
>
> [Citibank, N.A. v. Errico, 251 N.J. Super. 236, 247 (App. Div. 1991).]

A commercial or business mortgagee, not bound by the "foreclosure first requirement," N.J.S.A. 2A:50-2.3, can choose to collect on the note without first filing a foreclosure; it can choose to pursue a deficiency or not. Under Home's argument, if a deficiency action is not filed a debtor has no right to make a fair market value claim. As Home claims in its merits brief, "Absent a deficiency action, there is no such 'double recovery' by or 'windfall' to a foreclosing mortgagee, and thus no basis for a fair market value credit." We disagree. It is evident Home, by executing on both tracts, realized more than a double recovery when, in satisfaction of its debt of approximately $1.7 million, it received land valued at over $4 million. Equity cannot aid a creditor – standing to recover far in excess of what it is owed – which seeks to protect a windfall by refraining from instituting a deficiency action.

In MMU of New York, Inc. v. Grieser, 415 N.J. Super. 37, 45 (App. Div. 2010), we concluded "even in the absence of express statutory authorization, a court has inherent equitable authority to allow a fair market value credit in order to prevent a double recovery by a creditor against a debtor." In Grieser, 415

N.J. Super. at 45, we recognized our prior holding in Morsemere Federal Savings & Loan Association v. Nicolaou, 206 N.J. Super. 637, 640-41 (App. Div. 1986) – from which the terms quoted by Home, "double recovery" and "windfall," were taken – that a judgment creditor, who also successfully bid on the foreclosed property at sheriff's sale, could not intervene in the foreclosure action to claim surplus funds from the sale. We did, however, allow the judgment creditor to apply to the trial court for a share of the surplus funds. Morsemere, 206 N.J. Super. at 643-44. Moreover, we held the judgment debtor was entitled to claim a fair market value credit of the property purchased by the judgment creditor. Id. at 645. Although we recognized the fair market valuation provisions of N.J.S.A. 2A:50-3 did not expressly apply to judgment creditors, "by analogy to and in accord with the spirit of N.J.S.A. 2A:50-3," we applied the statutory procedures allowing a debtor to establish entitlement to a fair market value credit and saw

> no reason why a court of equity should not condition its award of relief to an applying creditor to prevent a possible double recovery or windfall, where the judgment creditor has purchased the property. A court of equity has the inherent power to prevent a potential double recovery or windfall to the judgment creditor who not only may profit on the purchase of the property at the foreclosure sale (if purchased for less than fair market value), but who also seeks to obtain satisfaction of his judgment.

8

[Id. at 644-45.]

In Grieser, the plaintiff executed on a defendant's property to satisfy a default judgment owed after the defendant failed to pay rent on a commercial lease. 415 N.J. Super. at 41. At sheriff's sale, which took place after the defendant's failed attempt to stay the sale and vacate the default judgment, the plaintiff purchased the property for $100. Ibid. Over five-and-one-half years later, the defendant filed a motion challenging the validity of the judgment. Id. at 42. We recognized, in connection with an appeal from the trial court's determination of that proceeding,

> [a] court of equity has the inherent power to prevent a potential double recovery or windfall to the judgment creditor who not only may profit on the purchase of the property at the foreclosure sale (if purchased for less than fair market value), but who also seeks to obtain satisfaction of his judgment.
>
> [Id. at 46.]

Home contends that the holding in Grieser is limited to judgment creditor cases and is inapposite in foreclosure actions. We do not discern any rational basis to render the equitable principles that prevent windfalls to a collecting creditor inapplicable to foreclosures. See, e.g., 79-83 Thirteenth Ave. Ltd. v. De Marco, 44 N.J. 525 (1965); Errico, 251 N.J. Super. 236; Resolution Tr. Corp.

9

v. Berman, 271 N.J. Super. 56, 63-64 (Law Div. 1993). As we held in Brunswick

II:

> It cannot be over-emphasized that the very nature of a foreclosure action suggests the potential for a forfeiture, and that—because "equity abhors a forfeiture," a court of equity may in appropriate circumstances, through application of fair market value credits, or by other recognized means, spare a party from an unwarranted forfeiture. Foreclosure, as we have observed, is a discretionary remedy. Because the pursuit of that remedy summons the court's equity jurisdiction, the court may, through the imposition of flexible remedies, adjust the parties' rights, with regard to the facts, to achieve a fair and just result.
>
> . . . .
>
> Ascertaining the fair market values of property acquired by [the creditor] is one way in which a court of equity may determine whether it has been overcompensated.
>
> [453 N.J. Super. at 330-31 (citations omitted).]

Relief through equitable principles is especially applicable in this case where Home was both a foreclosing mortgagee on the West Pleasant tract and a judgment creditor of Four G's. As evidenced by Home's separate pursuit of satisfaction from West Pleasant and Four G's, one debtor could not seek a fair market value credit in the other's foreclosure action. Thus, the dual-recovery mode chosen by Home was the more efficient judicial proceeding to determine

10

a fair market value credit for both debtors. West Pleasant was not precluded from pursuing a fair market value credit by filing a separate suit untethered to a deficiency action. That the action was commenced in the Law Division instead of the Chancery Division is of no moment; "each court has the ability to fashion equitable remedies." Errico, 251 N.J. Super. at 247.

## II

Home also contends that West Pleasant waived, released and discharged all claims, including an action for a fair market value credit, when it signed a consent order in the Bankruptcy Court proceedings. West Pleasant counters that the terms of the order applied only to Home's motions that were then pending in the Bankruptcy Court and the general terms of the waiver and release terms of the consent order did not include its right to seek a fair market value credit.

The agreed upon terms of the consent order, like a general release, are reviewable under "the general rules that apply to contract interpretation." Domanske v. Rapid-Am. Corp., 330 N.J. Super. 241, 246 (App. Div. 2000). "In determining the meaning or validity of a contract, our review is de novo." GMAC Mortg., LLC v. Willoughby, 230 N.J. 172, 183 (2017).

The consent order was reached just prior to a scheduled June 4, 2010 hearing at which the Bankruptcy Court was to determine the fair market value

of the tracts.[4]  In that "[t]he scope of a release is determined by the intention of the parties as expressed in the terms of the particular instrument, considered in the light of all the facts and circumstances," Bilotti v. Accurate Forming Corp., 39 N.J. 184, 203-04 (1963), we review the order's terms under that lens.[5]

The order provided that West Pleasant agreed to dismiss its bankruptcy case.  Other provisions paved the way for Home to execute on the West Pleasant tract:  any bankruptcy case West Pleasant filed within two-hundred-and-seventy days would not automatically stay Home's "exercise of any rights or remedies against the West Pleasant [p]roperty"; West Pleasant waived its "rights to object to or seek an adjournment of any sheriff's sale or other sale of the West Pleasant [p]roperty";[6] nothing in the order could be deemed a waiver or release by Home of its arbitration award, judgment or "any writs of execution issued in connection

[4]  Although the order was filed June 8, 2010, the parties inserted June 3 as the date they "stipulated and agreed" to the terms.

[5]  The order provides that the parties agreed to submit "to the exclusive jurisdiction of the Bankruptcy Court regarding any action to enforce or interpret" the order.  The Bankruptcy Court denied Home's motion to reopen the bankruptcy case for that court to determine the order's terms.  There is thus no legal impediment to preclude us from making this determination as part of this appeal.

[6]  John Campbell, vice president of West Pleasant, also agreed to this provision; it appears he did so in his individual capacity.

12

therewith, or any rights or remedies in connection with or in furtherance thereof as to obtaining title to, or in connection with the sale of, the West Pleasant [p]roperty." Home waived and released any claim it had for fees and costs in connection with West Pleasant's bankruptcy filing and Home's motion to remand its state court action against West Pleasant.

Both West Pleasant and John Campbell agreed

> [e]ffective upon the 271st day after this [c]onsent [o]rder becomes final and non-appealable, and except as set forth herein, [to] forever waive, release and discharge [Home], its agents, representatives, present or former officers, attorneys, directors, assigns and successors-in-interest from any and all claims, claims for relief, demands, costs, damages, liabilities, and obligations, in law or in equity, known or unknown, anticipated or unanticipated, or hereafter becoming known, or by reason of any matter, cause or thing, each arising under or related to the [m]otions.

Home agreed to a similar waiver-release-discharge provision as to West Pleasant and Campbell.

We state the obvious: the waiver-release-discharge terms of the order are broad and general. They do not reference a waiver or release of the right to pursue a fair market value credit. "A general release, not restricted by its terms to particular claims or demands, ordinarily covers all claims and demands due

13

at the time of its execution and within the contemplation of the parties." Bilotti, 39 N.J. at 204.

We first start with the order's language to ascertain if West Pleasant intentionally relinquished a known right. See W. Jersey Title & Guar. Co. v. Indus. Tr. Co., 27 N.J. 144, 152-53 (1958). The only qualification to the waiver-release-discharge provisions is that they relate to the motions filed by Home in February. The consent order reflected an "agreement with respect to" motions filed by Home on February 5, 2010, to dismiss West Pleasant's bankruptcy action because the motion was not filed in good faith and another motion filed on February 19, 2010, for relief from the automatic stay as to the West Pleasant tract because West Pleasant had no equity in the tract and the tract was not necessary to effect West Pleasant's reorganization. West Pleasant opposed the February 5 motion arguing its petition was not filed in bad faith. In its brief filed in opposition to the February 19 motion, West Pleasant argued Home "has liens on property that [is] worth at least $4,541,000 and as much as $5,883,000, to secure its claim of approximately $1,510,000." An appraisal obtained by West Pleasant of its tract calculated the "as is" value at $3,735,000 and an "as approved" value – assuming building and construction approvals – at $4,185,000. Home's appraisal, submitted in support of its February 5 motion,

14

calculated the combined value of the West Pleasant and the Four G's tract at $2,720,000. About two months later, Home submitted two new appraisals valuing the West Pleasant tract at $412,500 and the Four G's tract at $806,000. West Pleasant's appraiser submitted a supplemental report contesting Home's most recent appraisals and West Pleasant argued Home's appraisals were "so skewed in favor of [Home] that they cannot be reasonably relied upon."

It is evident West Pleasant perceived that either its tract or the Four G's tract could, arguably, satisfy Home's judgment. The valuation of the tracts was in issue with regard to Home's motion for relief from the Bankruptcy Court's stay. West Pleasant argued in its opposition brief to Home's February 19 motion, "the appraisals were specifically intended to assist [Home] in both its [m]otion to [d]ismiss and [the] Four G's [l]ift [s]tay [m]otion, and the West Pleasant [l]ift [s]tay [m]otion, in order to proceed with its prepetition sheriff's sale." And, contrary to West Pleasant's argument that "[i]t does not even appear that [it] was aware of any entitlement or claim to a credit for the fair market value," pointing out that <u>Grieser</u> was not decided until after the entry of the order, our State's jurisprudence has long-recognized a right – even an equitable right – to a fair market value credit. <u>See, e.g.</u>, <u>79-83 Thirteenth Ave. Ltd.</u>, 44 N.J. 525; <u>Errico</u>, 251 N.J. Super. 236; <u>Berman</u>, 271 N.J. Super. at 63-64.

15

In light of the intent of the parties – as evidenced by the terms of the order clearing Home's path to execute on the West Pleasant tract without obstacle – we determine West Pleasant, with full knowledge that its tract may be worth more than Home's judgment, waived its right to pursue a fair market value credit, a claim for relief "in law or in equity, known or unknown, anticipated or unanticipated, or hereafter becoming known, or by reason of any matter, cause or thing" which arose under and related to Home's motions.

Since "the words of the contract alone will not always control," Conway v. 287 Corp. Ctr. Assocs., 187 N.J. 259, 270 (2006), we look to the parties' behavior in carrying out its terms to ascertain the parties' intent to a contract, Savarese v. Corcoran, 311 N.J. Super. 240, 248 (Ch. Div. 1997), aff'd, 311 N.J. Super. 182 (App. Div. 1998). Evidence of "the interpretation placed on the disputed provision by the parties' conduct" can be used to determine the parties' intent. Conway, 187 N.J. at 269.

During his deposition on June 12, 2012, Campbell testified that West Pleasant's reorganization does "not make financial sense" to him because the Department of Environmental Protection (DEP), by virtue of a regulatory taking, had "already taken half our land." The "only concern" he had prior to the scheduled June 4, 2010 hearing was "having the attorneys spend a lot more time

16

and everybody spend a lot more money for something that [he] knew [could not] work." Campbell acknowledged that Home was seeking legal fees for, what he termed, West Pleasant's "nefarious ways of filing [for] bankruptcy."

Those two factors – the DEP's action and Home's claim for counsel fees – caused Campbell to conclude there was "no purpose" in paying attorneys and appraisers in connection with the motion hearing. He understood Home's goal was to proceed with the sheriff's sale against the West Pleasant tract without delay. He knew Home "want[ed] to be paid now"; "want[ed their] money right now." Campbell said, "Well, that wasn't a problem." He "didn't intend to create any[ ]more delays." By approving the consent order, he "was agreeing not to do anything at all that would slow [Home] up in having a sheriff's sale within the next . . . 270 days."

When asked at a June 13, 2012 deposition why West Pleasant did not bid on its property at the sheriff's sale, Campbell said, "We [were] not entitled to object to it. But again, we signed a consent agreement and I believe the consent agreement would . . . include that as well." He understood the terms of the order to be so broad as to prevent West Pleasant from seeking to amend the foreclosure judgment after Home purchased the Four G's tract for $100 because "we had a consent order from back in June of the previous year. And even though it doesn't

17

incorporate the Four G's, I think the spirit of it is, is that West Pleasant is not going to do anything that's going to interfere with [Home] exercising its rights."

"A contracting party is bound by the apparent intention he or she outwardly manifests to the other party. It is immaterial that he or she has a different, secret intention from that outwardly manifested." Brawer v. Brawer, 329 N.J. Super. 273, 283 (App. Div. 2000) (quoting Hagrish v. Olson, 254 N.J. Super. 133, 138 (App. Div. 1992)).

The terms of the order, the circumstances surrounding its entry, and the intent of West Pleasant, expressed through Campbell, clearly indicate that it was West Pleasant's aim to cut its losses and walk away from its property – the value of which Campbell felt was decimated by the DEP action – without risking further costs and fees. It agreed to the dismissal of its bankruptcy action and to refrain from impeding Home's collection on its judgment by executing against the West Pleasant tract. By agreeing to the broad release-waiver-discharge provisions, we are convinced it also intended to forgo any future claim for fair market value credit.

Our ruling renders it unnecessary to consider Home's claim that the entire controversy doctrine barred West Pleasant from pursuing a fair market value credit. Four G's, however, was not a party to the consent order between West

Pleasant and Home; it proceeded with a valuation hearing before the Bankruptcy Court.

III

Home's arguments that the doctrines of res judicata and collateral estoppel barred West Pleasant from relitigating the value of the Four G's tract because the Bankruptcy Court had valued it after an evidentiary hearing are without merit.

"The application of [the] res judicata doctrine requires substantially similar or identical causes of action and issues, parties, and relief sought," as well as a "final judgment by a court . . . of competent jurisdiction." Culver v. Ins. Co. of N. Am., 115 N.J. 451, 460 (1989) (first citing Eatough v. Bd. of Med. Exam'rs, 191 N.J. Super. 166, 173 (App. Div. 1983); and then quoting Charlie Brown of Chatham, Inc. v. Bd. of Adjustment, 202 N.J. Super. 312, 327 (App. Div. 1985)). Similarly, collateral estoppel requires: (1) a showing that the averred precluded issue is identical to the issue decided in the prior proceeding; (2) the issue was litigated in the prior proceeding; (3) the issue was the subject of a final judgment on the merits; (4) "the determination of the issue was essential to the prior judgment"; and (5) "the party against whom the doctrine is

19

asserted was a party to or in privity with a party to the earlier proceeding." <u>In re Estate of Dawson</u>, 136 N.J. 1, 20 (1994).

The issue before the Bankruptcy Court was whether Four G's had equity in its property; the Bankruptcy Court did not "determine the amount of the deficiency, by deducting from the debt secured the amount determined as the fair market value of the premises" on the date of the sheriff's sale. N.J.S.A. 2A:50-3. Although N.J.S.A. 2A:50-3 is not applicable to this commercial transaction, N.J.S.A. 2A:50-2.3, obvious logic dictates that the calculation of the property's value in order to determine a credit is at the time the property is sold at sheriff's sale. The Bankruptcy Court valued the Four G's tract prior to the sheriff's sale; the trial court correctly held "Four G's is entitled to have a determination at the time of the sheriff's sale, which was months later." The issues before the Bankruptcy Court and the trial court were not identical. The preclusion doctrines advanced by Home did not bar the trial court's determination of a fair market value credit regarding the Four G's property.

IV

Home argues that West Pleasant should have been judicially estopped from asserting one valuation plan of the highest and best use of the Four G's tract in one hearing and a different plan at the hearing regarding the West

Pleasant tract. In the first hearing, West Pleasant's expert testified that the highest and best use of the Four G's property was in tandem with the West Pleasant property which resulted in a subdivision consisting of twenty-two lots on the Four G's property, and eleven lots on the West Pleasant property. The trial court based the value of the Four G's tract on this plan as the highest and best use of the property. During the hearing to determine the value of the West Pleasant tract, West Pleasant presented expert testimony showing that the highest and best use of that property was not as a joint development with the Four G's property, but as a single parcel of property subdivided into twenty-one lots. The trial court found the highest and best value of the West Pleasant tract was based on its development of fifteen subdivided lots. Home claims the trial court erred because West Pleasant should have been judicially estopped from claiming the West Pleasant tract could be subdivided into more than eleven lots, in accordance with the plan West Pleasant proposed during the Four G's hearing.

Judicial estoppel most commonly applies when a party takes inconsistent positions in different legal actions and succeeds in maintaining one of those positions. Cummings v. Bahr, 295 N.J. Super. 374, 385-86 (App. Div. 1996). "If a court has based a final decision, even in part, on a party's assertion, that same party is thereafter precluded from asserting a contradictory position." Id.

at 387-88. Our Supreme Court explained the salutary policy considerations underpinning the application of the doctrine:

> [W]here a party has prevailed on a litigated point, principles of judicial estoppel demand that such party be bound by its earlier representations. See McCurrie v. Town of Kearny, 174 N.J. 523, 533 (2002) (concluding that "judicial estoppel precludes a party from taking a position contrary to the position he has already successfully espoused in the same or prior litigation"[).]
>
> [Guido v. Duane Morris LLP, 202 N.J. 79, 94-95 (2010).]

The separate hearings to determine the fair market value credits due from Home involved different parties, different tracts and different interests. West Pleasant, as assignee of the rights of Four G's, offered proof as to the highest and best use of the Four G's tract at the first hearing. In advancing its own interests, it offered different proofs, from different experts, as to the highest and best use of the West Pleasant tract.

The "highest and best use" of a property is "that use which at the time of the appraisal . . . is the most profitable likely use or produces the highest property value." Ford Motor Co. v. Edison, 10 N.J. Tax 153, 161 (1988), aff'd, 12 N.J. Tax 244 (App. Div. 1990), aff'd, 127 N.J. 290 (1992). We do not perceive that West Pleasant, by contending that the properties' highest and best

uses involved different plans for development, was "playing fast and loose with the courts," see Cummings, 295 N.J. Super. at 387 (quoting Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 (3d Cir. 1996)), so as to invoke the "extraordinary remedy" of judicial estoppel, In re Declaratory Judgment Actions filed by Various Municipalities, Cty. of Ocean, 446 N.J. Super. 259, 292 (2016) (quoting Ali v. Rutgers, 166 N.J. 280, 288 (2000)), aff'd, 227 N.J. 508 (2017).

We recognize that judicial estoppel may be invoked only in limited circumstances because it is an extraordinary remedy. Ibid. This is not one such circumstance.

V

Because West Pleasant agreed to the terms of the consent order and thereby waived its right to pursue a fair market value credit for the West Pleasant tract, we need not decide its cross-appeal claiming that the trial court erred in granting Home's motion barring West Pleasant's expert testimony regarding its entitlement to wetlands mitigation credits and in determining the value of the West Pleasant tract based on the development of fifteen lots instead of twenty-one lots.

23

West Pleasant argues the trial court erred in dismissing its abuse of process claim without a trial. Home counters that, after the valuation trial, "West Pleasant agreed to a procedure under which the Law Division would decide [the abuse of process claim] on the papers." The record is bereft of any pleadings, briefs or transcripts of proceedings between the last day of trial, August 17, 2016, and a motion hearing on July 21, 2017, that would indicate how the abuse of process claim came to be decided by the court on April 21, 2017. West Pleasant does not offer what it would have presented during a trial on the abuse of process claim that would have impacted the trial court's decision. Nor do we see that West Pleasant objected to the trial court's handling of that claim prior to this appeal. As such, we will not consider its procedural challenge. Zaman v. Felton, 219 N.J. 199, 226-27 (2014) (citing Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)).

The trial court considered the issues related to that claim pleaded in West Pleasant's second amended complaint: Home, after obtaining its judgment, levied upon the Four G's property and then foreclosed on West Pleasant's property without providing a credit for the Four G's property and breached its duty to provide West Pleasant with a fair market value credit for West Pleasant's

property upon which Home foreclosed.  In deciding whether Home's "election to proceed with two separate sheriff['s] sales to collect" its judgment was an abuse of process, the trial court acknowledged the lure of ascribing knowledge to Home that the Four G's property value was, as the court found after trial, $2,398,000.  The court also recognized:  "The injustice which occurred in the instant case revolved around the valuation of the property owned by Four G's. The artificially low value of the Four G's property caused the hardship to West Pleasant and the consequential foreclosure of the West Pleasant property."

The trial court properly analyzed the issue "in the light of the purpose behind [Home's] actions" in order to determine if Home performed further acts after process had been issued "which represent the perversion or abuse of the legitimate purposes of that process," Hoffman v. Asseenontv.Com, Inc., 404 N.J. Super. 415, 431 (App. Div. 2009) (quoting Baglini v. Lauletta, 338 N.J. Super. 282, 294 (App. Div. 2001)).

The trial court found that on the date the West Pleasant tract was sold at sheriff's sale, "there existed a palpable level of uncertainty as to the appropriate dollar value which would represent the fair market value of the Four G's property" "highlighted" by the significant difference in the property valuations by the trial court and the Bankruptcy Court.  The trial court noted the Bankruptcy

Court's finding that the property value of both tracts was insufficient to extinguish the indebtedness to Home; and that no one bid on the Four G's tract at the sheriff's sale. The trial court also considered that Home, in this commercial setting, had the right to first choose to collect its judgment, under law and the documents evidencing the debt, and seek repayment as a judgment creditor of Four G's rather than foreclosing on the West Pleasant tract.

In light of the uncertainty in the properties' values on the date of the West Pleasant sheriff's sale, the trial court concluded "[t]he purpose for which [Home] used the sheriff sale was to obtain recompense for the outstanding debt owed by the plaintiffs." The court opined,

> the use of the sheriff['s] sale to foreclose on the West Pleasant property was for a legitimate purpose[:] to secure assets due and owing. The fact that [Home] miscalculated the amount of credit which should have been afforded to West Pleasant does not change the character of the process into an abuse of power.

We affirm the dismissal of West Pleasant's abuse of process claim substantially for the reasons expressed by the trial judge. We abide by our familiar standard of review that mandates summary judgment be granted if the court determines "there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). We consider "whether the competent evidential materials

26

presented, when viewed in the light most favorable to the non-moving party" in consideration of the applicable evidentiary standard, "are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). We, however, disagree with the judge's conclusion that "West Pleasant had the opportunity to object to the [sheriff's] sale" of its property; the consent order prohibited such action. But even absent that finding, the evidence calling into question the true value of the properties supports the dismissal of West Pleasant's claim. Home had the right to proceed against both parcels in order to satisfy its judgment. It did not abuse any process.

## VII

To the extent we have not addressed the parties' other claims, except as set forth hereafter, we find insufficient merit to warrant discussion of them in this opinion. R. 2:11-3(e)(1)(E).

## VIII

Since we conclude the trial court erred in awarding West Pleasant the value of its tract because of the waiver and release terms of the consent order, we are constrained to reverse. As we have discussed, however, equity dictates that Home should not enjoy a windfall as a result of its acquisition of both tracts.

Consistent with <u>Brunswick II</u>, 453 N.J. Super. at 333-334, Home's acquisition of the West Pleasant tract, valued by the trial court at $1,985,020, satisfied, in full or to a large extent, its judgment, calculated by the trial court as of December 7, 2010, to be $1,736,808.37. By agreeing to the consent order, West Pleasant forwent any right to a credit on that property. West Pleasant, however, as assignee of Four G's, is entitled to a fair market value credit for the Four G's property, valued by the trial court at $2,398,000, less any amount, if any, required to satisfy the amount due Home in excess of the value of the West Pleasant tract.

We remand for the trial court to calculate the amount due Home on January 25, 2011, the date it acquired the West Pleasant property. If that amount exceeds the value of the West Pleasant property, that amount is to be deducted from the $2,398,000 due West Pleasant. The trial court shall enter judgment for that balance – or the entire $2,398,00 if the amount due Home does not exceed $1,985,000 – plus interest from December 7, 2010 as calculated by the trial court, against Home in favor of West Pleasant, as assignee of Four G's.

Affirmed in part, reversed in part and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1441-17T3