NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-5225-12T2
                      A-1893-13T3
                      A-2109-13T3


BRUNSWICK BANK & TRUST,

       Plaintiff-Respondent,

   v.

AFFILIATED BUILDING CORP.,

       Defendant-Appellant.

_____

| |
|---|
| **APPROVED FOR PUBLICATION** |
| **March 17, 2015** |
| **APPELLATE DIVISION** |

BRUNSWICK BANK & TRUST,

       Plaintiff-Respondent,

   v.

HELN MANAGEMENT, LLC,

       Defendant-Appellant.

_____

BRUNSWICK BANK & TRUST,

       Plaintiff-Respondent,

   v.

HELN MANAGEMENT, LLC, and AFFILIATED
BUILDING CORP.,

       Defendants-Appellants.

_____

Argued January 6, 2015 — Decided March 17, 2015

Before Judges Fisher, Nugent and Manahan.

On appeal from the Superior Court of New Jersey, Chancery Division, Middlesex County, Docket Nos. F-30990-10 (A-5225-12) and F-21231-13 (A-2109-13) and Monmouth County, Docket No. F-26278-10 (A-1893-13).

Philip R. Kaufman argued the cause for appellants.

Anthony B. Vignuolo argued the cause for respondent (Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., attorneys; Mr. Vignuolo and Anthony T. Betta, on the brief).

The opinion of the court was delivered by

FISHER, P.J.A.D.

In these three appeals of orders entered in three separate foreclosure actions, we consider, among other things, the impact caused by the plaintiff-lender having first sought and obtained a money judgment in the Law Division — before seeking foreclosure — for the purpose of determining whether plaintiff has been fully compensated. Because we can draw no certain conclusions from the convoluted and unsettled factual record, we remand.

I

The record generated in these cases reveals that between September 2007 and July 2009, plaintiff Brunswick Bank & Trust made five construction and development loans to defendants Heln

Management, LLC, and Affiliated Building Corp., that were guaranteed by Jeffrey Miller, a principal of both entities, and his daughter Melanie Miller. Each loan was secured by a mortgage on one of four properties, which we will refer to as Matthew Manor, Beacon Hill, Loren Terrace and Baldwin Street.[1] A table identifying the five loans is set forth below.[2]

In May 2010, plaintiff filed a complaint in the Law Division against Heln, Affiliated, and the two guarantors, on four of the five loans.[3] On August 18, 2010, the Clerk of the Court entered a default judgment in favor of plaintiff and against Heln for $1,884,141.84, against Affiliated for $175,000,

---

[1]To be more specific, Matthew Manor consists of seven lots in East Brunswick; Beacon Hill, Loren Terrace and Baldwin Street consist of single lots in Marlboro, East Brunswick and New Brunswick, respectively.

[2]

| Borrower | Loan Date | Loan Amount | Loan Security |
|----------|-----------|-------------|---------------|
| Heln | Sept. 18, 2007 | $1,500,000 | Matthew Manor |
| Heln | May 22, 2008 | $289,900 | Beacon Hill |
| Heln | Sept. 10, 2008 | $100,000 | Loren Terrace |
| Heln | April 20, 2009 | $300,000 | Baldwin Street |
| Affiliated | July 28, 2009 | $175,000 | Baldwin Street |

[3]The complaint did not seek relief on the $300,000 loan to Affiliated that was secured by a mortgage on Baldwin Street.

and against the guarantors for the entire amount of the indebtedness, $2,059,141.84. The judgment also declared that plaintiff was entitled to "post-judgment interest" and an attorney fee.

After filing the Law Division complaint, but a few months before default judgment was entered, plaintiff commenced three foreclosure actions; a fourth was filed three years later. Specifically, plaintiff filed a complaint in Monmouth County on May 10, 2010, against Heln seeking foreclosure on Beacon Hill, and two foreclosure complaints in Middlesex County on June 8, 2010 — one against Heln seeking foreclosure on Matthew Manor and the other against Affiliated seeking foreclosure on Baldwin Street. The fourth complaint was filed in Middlesex County on June 19, 2013, against Heln and Affiliated seeking foreclosure on Loren Terrace.

Defendants[4] did not respond to the first three foreclosure complaints, and judgments were entered foreclosing on Matthew Manor, Beacon Hill and Baldwin Street on May 2, 2012, September 5, 2012, and February 22, 2013; the judgments set the

---

[4]For clarity's sake, we refer to all defendants either individually or collectively as "defendants" even though not every proceeding involved all defendants.

redemption amounts at $1,679,400.19, $297,590.10, and $330,777.83, respectively.[5]

In July 2012, after entry of the foreclosure judgment regarding Matthew Manor, defendants applied for a stay of the sheriff's sale scheduled for certain lots within Matthew Manor. In his supporting certification, guarantor Jeffrey Miller asserted that Heln had contracted to sell one lot for $1,000,000, which would result in a $500,000 payment to plaintiff, and that Heln had also contracted to sell another lot for $1,735,000. In September 2012, the Chancery judge permitted the sales to continue with respect to all the lots within Matthew Manor except the lot for which there was an existing contract; as to this excepted lot, the judge ordered the sale to go forward if a closing did not occur by the end of October 2012.

Later, the judge considered defendants' application for a stay of all further foreclosure proceedings based on the contention that the loans were "over-collateralized." In his written decision, the Chancery judge recognized he was empowered to "prevent a potential double recovery or windfall to a judgment creditor," MMU of N.Y., Inc. v. Grieser, 415 N.J.

---

[5]These sums included awards of counsel fees of $7,500, $3,094.95, and $3,434.43, respectively.

Super. 37, 40 (App. Div. 2010), but he found the matter too muddled by the other pending matters and recognized the exercise of his power to prevent a windfall had to wait until "a full and complete factual record [could] be established."  Later, by order entered on March 6, 2013, the Chancery judge denied a motion to vacate or stay the pending sheriff sales but the right of redemption was extended until March 1, 2013.[6]  The judge also denied a request to consolidate the various lawsuits.

Defendants thereafter moved for an order declaring the Law Division judgment satisfied.  Defendants argued plaintiff had received $2,517,063.01 — consisting of $1,217,063.01 in cash[7] and $1,300,000 in property — which exceeded the amount due on the money judgment even when interest of $113,534.88, running from August 18, 2010, to March 1, 2013, was added.  On July 1, 2013, the Chancery judge discharged[8] the Law Division judgment "without prejudice to the legal rights and position of the parties as have been asserted or remain" in the Beacon Hill and Loren Terrace foreclosure actions.

---

[6] The final date for redemption is inexplicable in light of the date of the order, but we assume the order memorialized an earlier oral decision.

[7] Defendants allege that plaintiff was paid $717,063.01 in 2011 and received another $500,000 upon sale of a Matthew Manor lot.

[8] The order was entered in both the Law Division action and the Matthew Manor foreclosure action.

No appeal was filed regarding any of these orders. Those circumstances, however, set the stage for entry of the orders under review in these three appeals.

II

A. The first appeal. Prior to his disposition of the motion that led to the July 1, 2013 order described above, the Chancery judge heard argument on defendants' motion for a stay of a sheriff's sale of Baldwin Street. A temporary stay was granted to allow the parties to be heard on defendants' contention that the $175,000 Baldwin Street mortgage was subsumed within the Law Division judgment and had therefore been satisfied and, also, with regard to defendants' assertion that they had found a buyer for the property that would generate $335,000, which would more than satisfy the mortgage. Plaintiff responded that the contract price would not satisfy the amount still owed as reflected by the foreclosure judgment. Without conducting an evidentiary hearing to resolve this dispute, the judge denied the motion for a stay of the sheriff's sale.

Defendants' notice of appeal in A-5225-12 seeks review of the May 21, 2013 order that memorializes the judge's ruling.

B. The second appeal. In November 2013, defendants moved for a stay of a sheriff's sale of Beacon Hill in the one matter pending in another vicinage. In adhering to the approach taken

in the other matters, the judge in the Beacon Hill matter denied defendants' application by order entered on November 22, 2013, and plaintiff purchased Beacon Hill at the sheriff's sale that followed. Consequently, defendants filed their second appeal (A-1893-13).

C. <u>The third appeal</u>. As noted earlier, plaintiff's foreclosure complaint regarding Loren Terrace was not filed until June 19, 2013. Defendants responded to that complaint, asserting among other things that the underlying debt had been satisfied and plaintiff was otherwise estopped from foreclosing on the mortgage.

Defendants moved for dismissal, and plaintiff cross-moved for summary judgment. On November 18, 2013, after hearing oral argument, the Chancery judge granted plaintiff's summary judgment motion and struck defendant's answer to the foreclosure complaint; the order, however, also declared that its entry "will be without prejudice to [d]efendants' right to seek damages in the event of a reversal of this decision by the Appellate Division." In addition, the order directed that the case would thereafter proceed on an uncontested basis. Defendants, however, filed their third notice of appeal (A-2109-13) on January 2, 2014, before a final judgment could be entered.

A few months later, when the property was sold by mutual agreement of the parties — and with defendants' payment to plaintiff of the proceeds under protest — the judge entered an order, declaring that "subject to the appeal of the order . . . striking the [a]nswer of [d]efendants [] the within matter be and hereby is dismissed with prejudice" but that "this dismissal shall be without prejudice to the issues now on appeal."  The order additionally declared that "in the event [d]efendant[s] shall prevail on appeal, then [their] remedy shall be limited to money damages."[9]

III

Defendants present the same three arguments in all three appeals, namely: (1) whether plaintiff, by filing suit for a money judgment prior to seeking foreclosure, is bound by the money judgment as to the amount due on the underlying notes; (2) whether the mortgages were satisfied by the payment of the underlying obligation, and (3) whether, in a commercial transaction, mortgagors are entitled to a fair market credit for property taken in foreclosure.

---

[9]Our disposition of these appeals makes unnecessary our determination of whether defendants mistakenly filed a notice of appeal before finality was achieved in this matter in the trial court.

We commence our examination of these issues by mentioning a few legal principles that illuminate the way. To start, a mortgage is simply a form of "security for the payment of a debt," J.W. Pierson Co. v. Freeman, 113 N.J. Eq. 268, 271 (E. & A. 1933), and full payment of the underlying debt, by operation of law, will extinguish a mortgage, Valley Nat'l Bank v. Meier, 437 N.J. Super. 401, 404-05 (App. Div. 2014), certif. denied, __ N.J. __ (2015); see also Shields v. Lozear, 34 N.J.L. 496, 503 (E. & A. 1869) (holding that a mortgage "is annihilated by the extinguishment of the debt secured by it"). Furthermore, a "mortgagee is not entitled to recover more than full amount of [the] mortgage debt." 79-83 Thirteenth Ave., Ltd. v. De Marco, 79 N.J. Super. 47, 54 (Law Div. 1963), aff'd, 83 N.J. Super. 497 (App. Div. 1964), aff'd, 44 N.J 525 (1965). In addition, we have held that, even in a commercial setting, courts have "inherent equitable authority to allow a fair market value credit in order to prevent a double recovery by a judgment creditor against a judgment debtor." MMU of N.Y., Inc., supra, 415 N.J. Super. at 40. In that case, the plaintiff purchased the defendant's property at a sheriff's sale for nominal value and then quickly sold it for approximately $1,200,000. Id. at 41. We affirmed the trial court's ruling that the defendant, who owed the plaintiff $1,600,000 on a Law Division judgment,

was entitled to a credit based on the property's fair market value. Id. at 41-43. What these authorities illustrate is that plaintiff was entitled only to recover the amount of its loan — together with accruing interest and other damages permitted by the loan agreements — and defendants were entitled to a fair market credit for any property acquired by plaintiff in the collection of its debt.

Of further interest is that the "foreclosure first" rule, N.J.S.A. 2A:50-2, which acts to avoid the type of convoluted circumstances presented here, requires that foreclosure be sought first when collecting on a debt secured by a mortgage. Only if the eventual disposition of the foreclosed property fails to "bring an amount sufficient to satisfy the debt, interest, and costs," may the lender commence an action on the deficiency. Ibid.

Although the "foreclosure first" rule was intended to prevent the possibility of multiple actions for the recovery of such a debt, Light v. Granatell, 171 N.J. Super. 557, 561 (App. Div. 1979), the Legislature created exceptions and determined — for reasons apparently "based on efficiency and respect for arms-length business transactions," Bus. Loan Ctr., L.L.C. v. Nischal, 331 F. Supp. 2d 301, 309 (D.N.J. 2004) — that when the debt is secured "for a business or commercial purpose," such as

here, the lender is not obligated to foreclose first. N.J.S.A. 2A:50-2.3(a). As we have seen, plaintiff chose the alternative route permitted by this exception, thereby convoluting the circumstances now before us.[10]

In any event, as made clear by First Union Bank v. Penn Salem Marina, 190 N.J. 342, 344-45 (2007), by fixing in the Law Division the amount due on four of the loans, plaintiff is now estopped from claiming a greater amount was due on the same items of damages then adjudicated. As the First Union Court held, "[e]xcept for amounts accruing after the first judgment and for different categories of damages, the amount of the judgment entered in [both the Law Division and foreclosure] action[s] should be identical." Id. at 345.

Because of the lack of clarity in the record as to how the application of these principles impact the parties' rights and obligations, we remand for further proceedings. Despite the Chancery judge's accurate comment early in these proceedings regarding defendants' claims of "over-collateralization" and overpayment of the debt — that "a full and complete factual

---

[10]A further complication arises from the fact that the Law Division action sought a money judgment on only four of the five loans. Plaintiff's rights and remedies regarding that fifth loan are, therefore, not capped by the Law Division judgment except to the extent plaintiff may have already collected more than owed on the total of all five loans as a result of its efforts on the first four loans.

record" was required — uncertainty and unresolved fact disputes continue to plague an understanding of the parties' rights. The parties are entitled to a consideration of these issues after the creation of "a full and complete factual record."

We note that certain pieces of the puzzle are already in place. First, the Law Division judgment fixed the total amount of the principal indebtedness on four of the five loans at $2,059,141.84, as of August 18, 2010, the date judgment was entered; the certification submitted by plaintiff in support of the entry of that default judgment designates — and caps — the amount due on each of the four loans involved. That default judgment also awarded plaintiff post-judgment interest on the adjudicated principal, thus fixing the accrual of interest on any unpaid portion of that judgment — for however long it remained unpaid — at the rule-based interest rate contained in Rule 4:42-11(a).[11] Those determinations in the Law Division precluded the awarding of additional damages on those categories in the later Chancery Division actions. First Union Bank,

_____

[11]The judgment also found defendants liable for an "attorney fee," but no amount was fixed. The judge should determine whether plaintiff's failure to quantify its attorney's fees when applying for the default judgment in the Law Division constituted a waiver of that category of damages in the Chancery Division matters or whether it is more equitable to permit the later determinations in the foreclosure judgments to constitute awards for the unspecified attorney fee permitted by the Law Division judgment.

supra, 190 N.J. at 355.  On the other hand, plaintiff's right to seek relief on the fifth loan was not so limited.

We further observe that a certification, which was filed in support of defendants' motion to dismiss the Loren Terrace foreclosure action, asserted that plaintiff was paid $717,063.01 "[b]etween March 30, 2011 and December 28, 2011," and another $500,000 was paid to plaintiff on or about January 21, 2013.  It is not clear from the record whether plaintiff disputes these payments.  If so, then there must be an evidentiary hearing to resolve that dispute; if not, then the amount due on the Law Division judgment should have been reduced and the amount of interest accruing on the remainder should have been adjusted accordingly.  In addition, defendants contend plaintiff received property through sheriff's sales that would further reduce — or, if defendants are correct as to the property's fair market value, fully satisfy — the amount due on the judgment. Defendants are entitled to a credit against the outstanding indebtedness for the fair market value of the property obtained by plaintiff.   And plaintiff is entitled to recover any reasonable sums for expenditures properly incurred but not adjudicated by way of the Law Division action, such as — if applicable or permitted by the loan agreements — real estate taxes, insurance or property preservation.

In short, the questions posed in these appeals cannot be properly or clearly answered without a full accounting of the cash and property collected by plaintiff applied against the amount of the Law Division judgment and the interest that accrued on that judgment, as well as expenditures in "different categories of [permissible] damages" not adjudicated in the Law Division action. First Union Bank, supra, 190 N.J. at 345.

Although we are unsure of the practical effect of reversing the orders under review in A-5225-12 and A-1893-13,[12] we reverse those orders as well as the order granting summary judgment in favor of plaintiff under review in A-2109-13. And, we remand for further proceedings in conformity with this opinion. These proceedings should be conducted by the Chancery judge who presided over most of these lawsuits even though one of the matters — that which is before us in A-1893-13 — was adjudicated in a neighboring vicinage; to avoid inconsistent rulings or further delay, the matter requires a global resolution by a single judge.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[12]Those orders denied defendants' applications for stays of sheriff's sales that eventually went forward.