**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3523-19

AMBOY BANK,

     Plaintiff-Respondent,

v.

HARBOR VIEW ESTATES
LIMITED LIABILITY COMPANY,

     Defendant-Appellant,

and

RICHARD SHULMAN, JOHN
HAYNAL, DEBRA HAYNAL,
PETER R. MANGER, DENISE
M. MANGER, KURUK TONO
MIAKODA, SAKARI TIAA
MIAKODA, RECUPERO
CONSTRUCTION INC., and
MARONE CONTRACTORS, INC.,

     Defendants.

_____

Argued November 17, 2021 – Decided March 3, 2022

Before Judges Gilson, Gooden Brown, and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. F-013600-18.

Donald M. Lomurro argued the cause for appellant (Lomurro, Munson, Comer, Brown & Schottland, LLC, attorneys; Donald M. Lomurro and Christina Vassiliou Harvey, of counsel and on the briefs).

Mark A. Roney argued the cause for respondent (Hill Wallack, LLP, attorneys; Michael Kahme and Mark A. Roney, of counsel and on the brief).

PER CURIAM

This appeal arises out of an action brought by plaintiff Amboy Bank (Amboy) to foreclose on a mortgage on a property consisting of a partially developed townhouse project. Defendant Harbor View Estates, LLC (Harbor, LLC) is not appealing from the final foreclosure judgment. Instead, it appeals from a February 6, 2020 order that established a $2.9 million fair market value (FMV) credit for the foreclosed property and an April 24, 2020 order denying a motion to reopen the judgment. Harbor, LLC argues that the FMV was not based on sufficient credible evidence, there were numerous evidentiary errors at the FMV trial, and the trial court abused its discretion in denying reconsideration of the final FMV credit. We reject those arguments and affirm.

I.

Harbor, LLC was formed to develop a townhouse complex in the Mystic Island section of Little Egg Harbor Township. The plan was to develop forty-three townhouses in multiple-unit buildings. Each townhouse was to consist of 1,965 square feet, with three bedrooms, two-and-a-half baths, and a two-car garage.

In March 2014, Amboy agreed to loan Harbor, LLC $4,190,000 for project costs for the land, site, and construction for the residential townhome development. Over one year later, Amboy increased the loan to $4,980,000. In connection with the loan, Harbor, LLC gave Amboy a mortgage on the property and executed promissory notes to repay the loan. Harbor, LLC also executed an agreement under which it assigned to Amboy all proceeds from sales, leases, and rentals from the townhouses until the loan was repaid.

Harbor, LLC began construction on the townhouse project in 2015. The full project was never completed. Instead, in March 2018, construction and development stopped. By that time, two buildings were constructed with a total of eleven units. One of those buildings had five fully constructed units and two units that were ninety percent and seventy-five percent complete. In the other building, three units were seventy-five percent complete, and one unit had been

sold. A third building was partially constructed with its foundation, sewage and water lines, and some concrete installed.

Beginning in March 2018, and thereafter, Harbor, LLC failed to make the monthly payments due under the mortgage and notes. In June 2018, Amboy brought two actions against Harbor, LLC: (1) this foreclosure action; and (2) a separate action on the notes to collect any deficiency if the value of the mortgaged property was not sufficient to repay the full loan.[1]

Harbor, LLC filed an answer to the foreclosure complaint, admitting the loan and default. Nevertheless, Harbor, LLC alleged Amboy had breached the loan agreements by refusing to lend it more money to continue the development.

In February 2019, the Chancery court granted summary judgment to Amboy, struck Harbor, LLC's answer, and entered a default judgment. On April 8, 2019, the Chancery court entered a final judgment in favor of Amboy in the amount of $3,928,645.49 plus interest and costs. Thereafter, the court denied motions by Harbor, LLC to vacate the summary judgment order and final judgment.

---

[1] Harbor, LLC and individual guarantors of the loan filed a separate appeal from orders and a final judgment in the note-deficiency action. We address that appeal in a separate unpublished opinion. See Amboy Bank v. Harbor View Estates, L.L.C., et al., Docket No. A-1665-20.

On August 27, 2019, Amboy bought the property for $900,000 at a sheriff's sale. Harbor, LLC then moved for a FMV determination to obtain a credit against the foreclosure judgment.

A FMV trial was conducted over three days in January 2020. At trial, the court heard testimony from four witnesses: Samuel Juffe, who was the managing member of Harbor, LLC, and three real-estate appraisal experts. Harbor, LLC called James Grandrimo, Jr., of Grand Realty Group, and Amboy called Cynthia Xu and Patrick Ard, both from ARD Appraisal.

Juffe testified that he was a builder and realtor with over forty years of experience in the construction industry. He explained that the base price for a townhouse unit in 2017 was between $309,000 and $319,000. He acknowledged that only one unit had been sold in May 2017 for $348,500. He also explained that that price included an extra cost of $25,000 for the addition of an elevator. During his testimony, Juffe also explained that one of the leased townhouse units had been damaged and it would cost $30,000 to repair the damage.

Harbor, LLC's expert, Grandrimo, appraised the FMV of the development at the time of the sheriff's sale at $4.4 million. In calculating that FMV he used the income-capitalization approach and incorporated the subdivision-development method. Grandrimo began with the total cost to build each

townhouse unit, which he determined was approximately $170,000. He then calculated the average base sales price for each townhouse unit to be $300,000. In developing that base value, Grandrimo calculated a square-foot rate by using comparable sales of mostly single-family homes and one townhome in the area.

Grandrimo also calculated the absorption rate of the number of townhouse units that would sell during a six-month period. In making that calculation, he researched local property taxes and noted that real-estate taxes "were very reasonable relative to value not only in this particular development but in that general area." He testified that he had contacted the local tax assessor's office and was advised that the assessed value of the completed townhouse unit was $200,000, which was $100,000 less than his projected sale price of $300,000. In calculating his value, Grandrimo estimated that it would cost $576,000 to complete the townhouse project.

Xu, Amboy's expert, opined that the FMV for the townhouse development as of August 27, 2019, was $2.9 million. She explained that she used the same income-capitalization approach and incorporated the same subdivision-development method used by Grandrimo. In contrast to Grandrimo, she valued the average sales price per unit at $275,000, excluding buyers' options. To come up with that value, she conducted a statistical analysis of the real-estate market

6

in Little Egg Harbor Township. After explaining her method and calculations in detail, she testified that her appraisal was based on her expertise, expense information from Amboy, a property-inspection report, photographs from Amboy, and an exterior inspection of the property she had conducted in September 2019.

Ard also testified as an expert on behalf of Amboy. He explained that he supervised Xu and had not prepared a separate analysis. He agreed with Xu's FMV determination for the townhouse project.

On February 6, 2020, the court issued its decision on the FMV. The court agreed with Amboy's experts and found that the FMV for the township development project was $2.9 million as of August 27, 2019.

In support of its finding, the court issued a written opinion analyzing the testimony of Juffe and the three experts. The court initially noted that all three appraisal experts had applied an income-capitalization approach, incorporating the subdivision-development method. The court then analyzed and noted the differences between Grandrimo's evaluation and Xu's evaluation. The court discounted Grandrimo's opinion, finding his methodology "produced an estimated sales price per unit that overestimated the FMV." Specifically, the court found that Grandrimo had used comparable sales that created significant

variables, making it difficult to equalize value. In making that assessment, the court pointed out that the town's tax assessor had valued the townhouse units at approximately $100,000 less than Grandrimo's FMV price. The court noted that Grandrimo had explained that lower value; nevertheless, the court found that Grandrimo's explanation was insufficient to reconcile his FMV with that of the assessor.

By contrast, the court found Amboy's experts to be more reliable. The court noted that Amboy's experts used comparable townhomes that were in areas more compatible with the Harbor, LLC development. The court then analyzed several differences between the appraisals, including estimated cost of completion of the project and disputes over the repair costs to the damaged units.

Ultimately, the trial court was "not persuaded" by Harbor, LLC's opinions concerning the FMV. The court found that Amboy had "provided the more accurate and reliable appraisal." Accordingly, the court entered an order concerning its FMV determination and directed that the judgment of foreclosure be reduced by $2.9 million.

Shortly thereafter, Harbor, LLC moved to reopen the judgment and modify the FMV. The trial court, however, denied that motion in an order

entered on April 24, 2020. Harbor, LLC now appeals from the February 6, 2020 judgment and April 24, 2020 order.

## II.

On appeal, Harbor, LLC makes three main arguments with a series of sub-arguments. It contends that (1) the trial court's FMV determination lacks sufficient credible evidence; (2) the FMV determination was the product of a series of evidentiary errors; and (3) the trial court abused its discretion in not reopening and modifying the FMV. A review of the trial record and applicable law does not support these arguments.

1.  The Sufficiency of the FMV Determination.

Harbor, LLC contends that the trial court's conclusion as to the property's FMV was not supported by substantial credible evidence. We disagree.

Appellate review of a judgment following a bench trial is limited. Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011). The trial court's findings of fact are entitled to deference on appeal and will not be disturbed so long as they are supported by substantial credible evidence in the record. Slutsky v. Slutsky, 451 N.J. Super. 332, 343-44 (App. Div. 2017). Deference is particularly appropriate where those findings depend on credibility

evaluations made after a full opportunity to observe the witnesses. State v. Hubbard, 222 N.J. 249, 262 (2015); Cesare v. Cesare, 154 N.J. 394, 412 (1998).

Fair market value is defined as "that price which a hypothetical buyer would pay a hypothetical willing seller" or "the price reasonably expected to be obtained for the subject property through the actions of the marketplace." Aliotta v. Twp. of Belleville, 27 N.J. Tax 419, 449 (Tax 2013). "Determining the fair market value of a parcel is not a science, but rather it involves an estimation based on a number of variables." City of Asbury Park v. Asbury Park Towers, 388 N.J. Super. 1, 9 (App. Div. 2006).

At trial, Harbor, LLC and Amboy both presented experts to opine on the FMV of the townhouse development as of the time of the sheriff's sale in August 2019. The experts used the same income-capitalization approach that incorporated the subdivision-development method. Despite using the same methodology, their opinions diverged by a difference of $1.5 million in FMV, with Grandrimo opining that the FMV was $4.4 million and Xu opining that the FMV was $2.9 million.

The trial court found that the primary difference between the experts was their determinations of the unit price of the unsold townhouses. Grandrimo opined that the average unit price was $300,000, while Xu determined that the

average unit price was $275,000 before options. The trial court analyzed the comparable sales used by the experts and found that Grandrimo's opinion was based on an "overly optimistic value and, therefore, too high." The trial court's factual findings are supported by substantial credible evidence in the record. In short, the court found the opinion offered by Xu to be more persuasive and credible. See Todd v. Sheridan, 268 N.J. Super. 387, 401 (App. Div. 1993) (recognizing that a factfinder may accept some of an expert's testimony and reject the rest).

Harbor, LLC argues that we can reverse a determination of value when an assessor misconstrues an essential element of the property. It contends that Xu misconstrued the comparable sales and improperly used an isolated development, Tall Timbers, to lower the FMV. It also argues that the trial court failed to accurately evaluate Xu's opinion and asserts Xu ignored factors affecting value, such as water views, amenities, superior construction materials, anti-flooding construction materials, the age of the townhomes, the poured foundations, and comparable properties and sales within the last three years.

Harbor, LLC also argues that the trial court misconstrued the average sale price by finding that homes on Mystic Island and Osborn Island were not comparable. It also complains that the trial court found Tall Timbers was

11

comparable because it was only a mile away; however, Harbor, LLC points out that Tall Timbers was over two miles away.

All the arguments made by Harbor, LLC essentially dispute issues that were presented to the trial court and on which the trial court made findings contrary to Harbor, LLC's positions. The trial court's rejection of Harbor, LLC's positions is not grounds for reversal. The material point is that the findings made by the trial court were amply supported by the evidence in the record. Moreover, the trial court's applications of the well-established law to those findings were not in error. Accordingly, the trial court's conclusion as to the property's FMV was supported by substantial credible evidence.

2.    The Evidentiary Issues.

Harbor, LLC argues that there were four evidentiary errors at trial that individually and cumulatively infected the trial court's FMV determination. Specifically, Harbor, LLC argues that the trial court erred by (1) considering a hearsay opinion by the non-testifying tax assessor; (2) precluding Harbor, LLC's attorney from cross-examining Amboy's experts concerning a prior appraisal; (3) permitting Ard to testify and bolster the opinion of Xu; and (4) considering Amboy's appraisal concerning the damage to a townhouse when the appraiser

12

did not visit the property before the damage. Harbor, LLC then argues that the cumulative errors require a new trial. We reject these arguments.

Appellate courts accord substantial deference to a trial court's evidentiary rulings, including the admission or exclusion of evidence, and only reverse if the trial court abused its discretion. Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 374 (2010); Hisenaj v. Kuehner, 194 N.J. 6, 12 (2008). Moreover, the third and fourth evidentiary arguments now raised by Harbor, LLC were not raised at trial. Consequently, we review those arguments for plain error. See Baker v. Nat'l State Bank, 161 N.J. 220, 226 (1999) ("Relief under the plain error rule, R. 2:10-2, at least in civil cases, is discretionary and 'should be sparingly employed.'" (quoting Ford v. Reichert, 23 N.J. 429, 435 (1957))); see also Szczecina v. PV Holding Corp., 414 N.J. Super. 173, 184 (App. Div. 2010) (explaining the possibility of an unjust result must be sufficient to raise reasonable doubt as to whether error or omission led the fact finder to a result that it otherwise might not have reached).

First, Harbor, LLC argues that the trial court erred by relying on inadmissible hearsay from a tax assessor, a non-testifying witness, as indicative of the property's true FMV. In that regard, Harbor, LLC challenges the court's use of the tax assessor's opinion to reject Grandrimo's evaluation. This argument

is based on a mischaracterization of the trial court's rejection of Grandrimo's opinion on the FMV.

It was Grandrimo who, in explaining his opinion, referenced the tax assessor's assessment of the townhouses. In explaining his calculation of the absorption rate of the number of townhouse units that would sell in a six-month period, Grandrimo explained that he had researched the local property taxes. He testified that he had contacted the local tax assessor's office and was advised that the assessed value of the completed townhouse units was $100,000 less than his projected sales price of $300,000. In evaluating the reliability of Grandrimo's opinion, the trial court noted the discrepancy between the lower tax assessment and the higher unit price used by Grandrimo. The trial court then noted that "although not dispositive," that discrepancy undermined Grandrimo's estimate.

Just as importantly, the court found other problems with Grandrimo's evaluation, and those findings are supported by substantial credible evidence in the record. In short, the trial court's use of the testimony concerning the tax assessment was based on Grandrimo's testimony and not inadmissible hearsay.

Next, Harbor, LLC argues that the court erred by denying its counsel the opportunity to cross-examine Xu concerning an earlier appraisal prepared by

14

ARD Appraisal. Harbor, LLC contends that Xu's credibility was undermined by the different appraisals. In her direct testimony, Xu discussed the differences between a September 2019 appraisal report and a July 2018 appraisal report. The 2019 report opined that the property had an "as is" value of $2.9 million as of August 2019. The 2018 report opined that the property had an "as is" value of $3.46 million in May 2018. That 2018 report also went on to note that the property had an "as improved" value of $3.93 million in May 2019.

On direct examination, Xu testified that the difference in values were attributed to lower projected unit prices, increased construction costs, and increased property taxes. Harbor, LLC's counsel was permitted to cross-examine Xu on the 2018 report and its different "as is" valuation. The trial court limited the scope of questioning when Harbor, LLC's counsel attempted to ask questions about the 2018 report's "as improved" valuation. The court reasoned that testimony concerning the "as improved" valuation was not relevant because the FMV determination was focused on an "as is" valuation. Because the trial court had to determine the property's FMV as of the sheriff's sale in August 2019, we discern no abuse of discretion in the trial court's decision to focus the evidence on the "as is" evaluation and preclude cross-examination on "as improved" valuation.

A-3523-19

Third, Harbor, LLC argues that the court erred by allowing Ard to testify to bolster Xu's testimony. Harbor, LLC, however, did not object to Ard's testimony at trial. Accordingly, we find no merit to this argument and refuse to consider it for the first time on this appeal. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973); Chirino v. Proud 2 Haul, Inc., 458 N.J. Super. 308, 318 (App. Div. 2017) (explaining that appellate courts generally decline to consider questions or issues not properly presented to the trial court).

In its fourth evidentiary argument, Harbor, LLC contends that the trial court erred by allowing Xu and Ard to testify concerning the value of the repairs to a damaged townhouse unit when they had not visited the unit and inspected the interior of the unit. Accordingly, Harbor, LLC argues that the 2019 appraisal report included a net opinion concerning the estimate of the damages to one unit and remediation necessary at other units.

At trial, both parties' experts testified about the need to repair certain units and the estimated costs of those repairs. Grandrimo's estimate was approximately half of Xu's and Ard's estimate. Accordingly, there was no dispute that some of the completed or almost completed townhouse units needed repairs. All the experts relied on photographs and other information as to the repair costs. Significantly, the experts took the same approach in obtaining

16

information related to the necessary repairs. This alleged error was never raised at trial, and we discern no abuse of discretion or plain error "capable of producing an unjust result." R. 2:10-2. In that regard, we note that an expert can rely on his or her own knowledge, as well as on facts supplied by others. See Bellardini v. Krikorian, 222 N.J. Super. 457, 462-63 (App. Div. 1988).

Finally, having found no individual evidentiary issue that warrants a reversal, we reject Harbor, LLC's argument that the errors in cumulation require a new trial. The evidentiary issues Harbor, LLC complains about did not have a cumulative effect of depriving it of a fair trial. See Torres v. Pabon, 225 N.J. 167, 190-91 (2016) (explaining that the trial court's judgment will only be reversed if the cumulative effects of small errors is so great as to cause undue prejudice).

3. The Motion to Reopen the Judgment.

Finally, Harbor, LLC argues that the trial court abused its discretion by not reopening and modifying the judgment under Rule 4:50-1.[2] Harbor, LLC

---

[2] Before the trial court, Harbor, LLC indicated that it was moving under Rule 4:49-1, which, in a trial tried without a jury, allows the trial judge to take additional testimony, make new findings, and enter a new judgment. A motion under Rule 4:49-1, however, must be made within twenty days after the judgment is announced. R. 4:49-1(b). The judgment was issued on February 6, 2020. Harbor, LLC did not move to reopen the judgment until March 2, 2020. Accordingly, the motion is properly treated as a motion under Rule 4:50-1.

sought to submit evidence that Amboy "potentially" received the sum of $576,230 when a performance construction bond Harbor, LLC had posted was called by Little Egg Harbor Township.

Under Rule 4:50-1, a party may move for relief from a judgment or order for the following reasons:

> (a) mistake, inadvertence, surprise, or excusable neglect; (b) newly discovered evidence which would probably alter the judgment or order and which by due diligence could not have been discovered in time to move for a new trial under R. 4:49; (c) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (d) the judgment or order is void; (e) the judgment or order has been satisfied, released or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or order should have prospective application; or (f) any other reason justifying relief from the operation of the judgment or order.

A motion to reopen a judgment is "granted sparingly." State, Div. of Youth & Fam Servs. v. T.G., 414 N.J. Super. 423, 434 (App. Div. 2010) (quoting F.B. v. A.L.G., 176 N.J. 201, 207 (2003)).

The decision of whether to grant relief under Rule 4:50 is left to the trial court's sound discretion and should be guided by equitable principles. See Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994); ATFH Real Prop., LLC

v. Winberry Realty P'ship, 417 N.J. Super. 518, 528 (App. Div. 2010). The trial court's determination is entitled to substantial deference from an appellate court, which will not reverse absent a clear abuse of discretion. U.S. Bank Nat. Ass'n v. Guillaume, 209 N.J. 449, 467 (2012). A trial court abuses its discretion when it makes its decision "without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Ibid. (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007)).

In connection with its development of the townhouse project, Harbor, LLC had posted a construction performance bond with the Township in the amount of $576,230. On January 9, 2020, the Township passed a resolution authorizing the commencement of a draw down against the performance bond. The resolution stated that "the Township is putting a claim against the bond to have the necessary public improvements completed. These improvements will include roads, sidewalks, landscaping, and stormwater improvements." The resolution also directed the clerk of the Township to forward a certified copy of the resolution to Harbor, LLC.

The resolution was issued twenty-seven days before the trial court announced its judgment on February 6, 2020. Harbor, LLC moved to reopen the judgment on March 2, 2020. It argued that it had not presented any evidence of

the call on the performance bond because Amboy never gave it notice that it was seeking monies from the Township's call on the bond. Harbor, LLC also argues that it would be inequitable if Amboy ultimately receives money under the performance bond because those monies should affect the FMV determination.

Amboy is entitled to recover the amount of its loan, together with accrued interest and other damages permitted by the loan agreements. Harbor, LLC is entitled to a fair market credit for any properties acquired by Amboy in the collection of the debt as of the time that Amboy acquired the property; that is, August 2019. See Brunswick Bank & Tr. v. Affiliated Bldg. Corp., 440 N.J. Super. 118, 125 (App. Div. 2015). The performance bond is not part of that equation and was given to the Township to guarantee the infrastructure work in the development would be completed. In April 2020, Harbor, LLC filed a complaint against the Township to recover what it claimed to be its share of the bond. Harbor, LLC has also filed a third-party complaint in the Township's action on the bond. Consequently, even after the judgment was entered, it is not clear whether Amboy will receive anything because of the Township's call on the bond.

A-3523-19

The trial court determined that Harbor, LLC should have known of the call or potential call on the performance bond during trial or before the February 6, 2020 judgment was issued. We discern no abuse of discretion in that finding.

III.

In summary, the trial record demonstrates that the court considered evidence regarding the FMV of the project as of August 2019. The trial court's determination of the FMV was based on substantial credible evidence, and the court made detailed factual and credibility findings as to why it accepted the appraisal offered by Amboy's experts. Having carefully considered the record and the law, we discern no reversible error.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION