**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2929-20

BRUNSWICK BANK & TRUST,

    Plaintiff-Respondent,

v.

AFFILIATED BUILDING
CORP., and HELN
MANAGEMENT, LLC,

    Defendants-Appellants,

and

THE STATE OF NEW JERSEY,

    Defendant.

_____

        Submitted May 3, 2022 – Decided May 13, 2022
        Motion for Reconsideration Granted May 26, 2022
        Resubmitted May 26, 2022 – Decided June 27, 2022

        Before Judges Fisher and DeAlmeida.

        On appeal from the Superior Court of New Jersey, Chancery Division, Middlesex County, Docket Nos. F-30989-10, F-30990-10 and F-21231-13, Monmouth County, Docket No. F-26278-10.

Philip R. Kaufman, attorney for appellants.

Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, attorneys for respondent (Anthony B. Vignuolo, on the brief).

PER CURIAM

For the past twelve years, the parties have engaged in extensive litigation concerning plaintiff Brunswick Bank & Trust Co.'s attempts to collect on loans made to defendants. The matter has come before us twice before. See Brunswick Bank & Trust Co. v. Heln Mgmt. LLC, 453 N.J. Super. 324 (App. Div. 2018); Brunswick Bank & Trust Co. v. Affiliated Bldg. Corp., 440 N.J. Super. 118 (App. Div. 2015). The circumstances are certainly convoluted but the mandate in our second decision – issued more than four years ago – was clear: the chancery judge was to ascertain the fair market value of certain properties and apply those values to the collective debt to ensure the bank did not receive more than owed. Because the judge failed to comply with our mandate, we are constrained to remand again.

The facts and circumstances are thoroughly discussed in our prior opinions, so we will not repeat ourselves except as may be necessary for a full understanding of today's disposition. Briefly, the cases in the trial court concern five construction and development loans, four of which were made to

defendant Heln Management, LLC, and a fifth to Affiliated Building Corp.; Jeffrey Miller, a principal in both entities, and his daughter Melanie Miller, guaranteed the repayment of these loans. The promise to repay was supported by mortgages held by the bank on defendants' properties.

When a default occurred, the bank commenced a Law Division action and obtained a money judgment in 2010 against Heln for $1,884,141.84, and against Affiliated for $175,000; this judgment encompassed only four of the five loans. The bank also commenced four separate foreclosure actions, three in Middlesex County and one in Monmouth County. Three of the four were filed in 2010 before the money judgment was entered in the Law Division, and the fourth was filed in 2013. Default judgments in the foreclosure actions, which set redemption amounts, were entered in 2012 and 2013, and the mortgaged properties were sold at sheriff's sales.

In the first appeal (Brunswick Bank I) we were concerned, as was the chancery judge at the time, that the bank may have already been fully compensated. 440 N.J. Super. at 328. To prevent a windfall, we remanded so there could be further factual development about what defendants owed and what the bank had collected. When questions remained after the disposition in the chancery court that followed, we again remanded, reinforcing the central

theme of both our decisions: the bank was entitled to collect "only what was collectively owed [by] these defendants." Brunswick Bank II, 453 N.J. Super. at 330.

We observed in Brunswick Bank II that the now-retired chancery judge had endeavored to comply but questions remained. That is, the judge recognized the bank was owed "at least" $2,700,000 and had received $2,599,208.51. Id. at 331. There, thus, remained a relatively small amount that arguably had not been collected; we also recognized, however, that the bank had "c[o]me away with the properties known as Baldwin and Beacon Hill" and money from the Loren Terrace property beyond what had been collected. Id. at 332-34. In light of these circumstances, we explained in Brunswick Bank II "exact[ly]" what was thereafter required:

> [W]e direct that the judge first determine whether Baldwin had a fair market value greater than the approximate $250,000 shortfall [existing at the time]. If so, then Brunswick Bank, by becoming Baldwin's owner, would have been fully compensated and no further right in equity would have existed to proceed against any other mortgaged property or any other assets of defendants. The precise amount above the rounded shortfall of $250,000 – that is, if Baldwin's fair market value was greater – would be irrelevant since that is the type of windfall law and equity would allow Brunswick Bank to reap.

4

If, however, Baldwin did not possess a fair market value in excess of $250,000, then Brunswick Bank was entitled to further pursue its collection efforts and to force a sheriff sale of Beacon Hill. If the judge's future findings are in accord with this possibility, the judge must ascertain what thereafter remained due to Brunswick Bank and, once ascertained, whether the fair market value of Beacon Hill exceeded what remained of the $250,000 shortfall. If Beacon Hill's fair market value did not swallow that remaining shortfall, then the judge could find Brunswick Bank entitled to pursue the Loren Terrace proceeds but only to the extent of the remaining shortfall once the fair market values of both Baldwin and Beacon Hill have been applied against the shortfall existing on June 17, 2013. If, however, the shortfall was extinguished by Brunswick Bank's receipt of the fair market value of both Baldwin and Beacon Hill, Brunswick Bank would have no right to any part of the Loren Terrace funds ($147,387.37) obtained in January 2014.

[Id. at 333-34.]

Soon after our February 21, 2018 remand, the parties stipulated some of the relevant facts, such as the fair market values of the properties referred to in our mandate. For example, they agreed Baldwin's fair market value in June 2013 was at least $320,000, so, if the bank was then owed less than that amount – as we previously surmised it was, id. at 333 – our mandate would

A-2929-20

require entry of a judgment that the bank was fully compensated and an award in favor of defendants for that which had been overpaid.[1]

But that's not what happened. Indeed, nothing happened immediately after the parties stipulated the relevant fair market values in November 2019.[2] The case sat dormant until the judge rendered his opinion on April 16, 2021, and entered judgment on May 7, 2021, dismissing – apparently based solely on the judge's interpretation of the law – defendants' claim to the application of the fair market value credit of properties taken by the bank by way of sheriff's sale or by settlement.

Defendants again appeal, arguing, among other things, that our decision about their entitlement to fair market value credits was the "law of the case" and binding on the trial judge. We agree.

---

[1] We recognized in <u>Brunswick Bank II</u> that even if the value of Baldwin exceeded the remainder due from defendants, the bank would not be obligated to disgorge the difference. 453 N.J. Super. at 333 (holding "the precise amount above the rounded shortfall of $250,000 – that is, if Baldwin's fair market value was greater – would be irrelevant since that is the type of windfall law and equity would allow Brunswick Bank to reap"); <u>see</u> <u>West Plesasant-CPGT, Inc. v. U.S. Home Corp.</u>, 243 N.J. 92, 109 n.3 (2020).

[2] The parties' submissions to this court suggest the pandemic caused the delay but considering the clarity of our mandate and the stipulation of the remaining relevant facts, it is not clear how the limitations placed on our courts during the pandemic could have caused any delay. There was no testimony to be taken. The matter required nothing more than the judge's application of the stipulated facts to the framework provided by <u>Brunswick Bank II</u>'s mandate.

A-2929-20

Disregarding our mandate and ensorcelled by the bank's arguments and its "disagree[ment]" with Brunswick Bank II, the judge relied on other earlier authorities, which we had already considered, rather than comply with our own binding decision about how the court was to proceed. In short, the judge: adopted the bank's view, which we had already rejected in this context, that "a [f]air [m]arket [v]alue credit is only available whe[n] a deficiency is pursued"; believed he was supported in this regard by the Supreme Court's 2020 decision in West Pleasant; ignored our mandate; and concluded, without any other explanation, that the bank "has never been fully paid."[3]

---

[3] The judge did not make any findings about the amount he believed still due the bank. His predecessor also did not make this determination but he came the closest when he found, as expressed in his September 18, 2015 written opinion, that defendants

owed the [b]ank the following:

(1) $2,059,141.84 Law Division judgment, plus court rate interest from August 18, 2010. Defendants' calculated court rate interest as of August 2, 2011 of $56,590.68 in that [j]udgment;

(2) $327,345.40 on the loan that was not included in the Law Division [j]udgment, plus post-judgment interest and costs incurred by the [b]ank, such as real estate taxes; and

(3) $200,000 loaned August 23, 2011 (not included in the Law Division [j]udgment), plus

Justice Brennan long ago expressed the well-established principle that a trial judge "is under a peremptory duty to obey in the particular case the mandate of the appellate court precisely as it is written." Flanigan v. McFeely, 20 N.J. 414, 420 (1956) (citing In re Plainfield-Union Water Co., 14 N.J. 296, 303 (1954); McGarry v. Central R. Co. of N.J., 107 N.J.L. 382 (E. & A. 1931); Hellstern v. Smelowitz, 17 N.J. Super. 366, 371 (App. Div. 1952); Jewett v. Dringer, 31 N.J. Eq. 586 (Ch. 1879)); see also Park Crest Cleaners, LLC v. A Plus Cleaners & Alterations Corp., 458 N.J. Super. 465, 472 (App. Div. 2019); State v. Kosch, 454 N.J. Super. 440, 444 (App. Div. 2018); Henebema v. Raddi, 452 N.J. Super. 438, 451 (App. Div. 2017); Tomaino v. Burman, 364 N.J. Super. 224, 233 (App. Div. 2003). Our mandate in Brunswick Bank II

---

interest. Interest on that loan as of January 2013 was $27,750.

Accordingly, [d]efendants owed the [b]ank $2,670,825.92 plus additional interest not calculated, attorney's fees and costs, such as real estate taxes paid, not included in the [j]udgment.

The chancery judge, whose decision is now before us, did not contradict his predecessor's finding, which remains incomplete (interest and other alleged expenses were not quantified) and imperfect (the sum of the items listed by the judge amounts to $2,670,827.92, not the $2,670,825.92 contained in the prior judge's ultimate finding). He merely concluded in the decision under review that the bank had not been fully paid. Because the judge did not explain how he came to this view, his conclusory finding that the bank has yet to be fully compensated is not worthy of appellate deference. See Colon v. Coordinated Transp., 141 N.J. 1, 11 (1995).

A-2929-20

could not have been clearer. We required the trial judge to ascertain the fair market values of certain properties and instructed the judge specifically on how to apply those values in determining whether the bank had been fully compensated and, if so, when. The chancery judge failed to comply with our mandate; his decision and the order on which it is based cannot stand.

We are mindful that part of the judge's decision to sidestep our mandate was the Supreme Court's recent West Pleasant decision. Still, the judge was required to comply with our mandate and not determine whether our prior decision had been undermined by a more recent, higher authority. As the Supreme Court has held, any "[r]elief from [an appellate court's] directions, even though manifestly erroneous, can be had only in the appellate court whose judgment it is." Plainfield-Union Water Co., 14 N.J. at 303; see also Hellstern, 17 N.J. Super. at 370-71. In other words, it was incumbent on the bank – if it believed West Pleasant had eviscerated our prior holding – to come to us and seek a modification of our mandate rather than ask and persuade the trial judge to depart from his clear obligations. Absent some other direction from us, the judge was required to strictly adhere to our mandate.

Moreover, had the bank sought relief from us because of West Pleasant, we would not have altered our mandate. In that case, the Supreme Court

expressly noted that the debtor's reliance on <u>Brunswick Bank II</u> was "of no help" to its position because of distinguishing circumstances. <u>See</u> 243 N.J. at 109 n.3. If we were wrong in <u>Brunswick Bank II</u>, and if <u>West Pleasant</u> intended to preempt entirely the fair-market-value-credit field, it would have said so. Instead, the Court found the circumstances in <u>Brunswick Bank II</u> materially different from those considered in <u>West Pleasant</u>. We therefore conclude <u>West Pleasant</u> does not present a basis for changing or adjusting our prior mandate.

Although we have no present reason to question the bank's motives in the manner in which it sought collection of the debt, our jurisprudence, including <u>West Pleasant</u>, recognizes the mischief that might follow if courts allowed creditors to orchestrate collection efforts on over-collateralized loans for the sole purpose of maximizing a recovery beyond the collective debt owed. The <u>West Pleasant</u> Court recognized this by observing that courts continue to possess "equitable, 'analogous nonstatutory relief' in the form of fair market value credit in appropriate circumstances." 243 N.J. at 107-08 (citing <u>79-83 Thirteenth Ave., Ltd. v. De Marco</u>, 44 N.J. 525, 534-35 (1965), and <u>Morsemere Fed. Sav. & Loan Ass'n v. Nicolaou</u>, 206 N.J. Super. 637, 645 (App. Div. 1986)). In reaching its holding in <u>West Pleasant</u> about fair market

10

value credits, the Court expressly observed that this very case was different, 243 N.J. at 109 n.3, which was proof enough that our mandate had not been rendered infirm. And to repeat, even if West Pleasant required that our mandate be modified or rejected, it was for this court or the Supreme Court to say, not the chancery judge.

Finding West Pleasant does not preclude application of our prior mandate, we turn to a consideration of an appropriate appellate remedy. In a prior opinion, which we withdrew when we granted the bank's reconsideration motion, we exercised original jurisdiction under Rule 2:10-5 to partially resolve the parties' disputes while remanding for the complete fulfillment of our prior mandate.

But, on reconsideration, we withdrew our prior opinion for the chief purpose of rescinding our exercise of original jurisdiction and our conclusion that application of Baldwin's fair market value provided the bank with all the compensation to which it was entitled. We take this action because the amount of the debt owed the bank on the pivotal date identified in Brunswick Bank II has yet to be precisely determined. In explaining ourselves and the manner in which this case should proceed on remand, we provide some additional thoughts.

11

In moving for reconsideration, the bank referred to our statements and assumptions in the withdrawn opinion and in Brunswick Bank II, 453 N.J. Super. at 332-33, that the bank was owed "at least $2,700,000" and the bank had collected nearly $2,600,000. The bank claims this is "an inaccurate statement since the full amount due to the [b]ank had not been calculated at that time." Despite the many years and numerous opportunities for the trial court to make a concrete finding about the precise amount of the indebtedness, the bank is sadly correct. Our mistake in the withdrawn opinion was in assuming that the 2015 estimate provided by the prior judge, see n. 3, was essentially accurate and a more definitive ruling was unnecessary; we, however, now recognize the need for a precise determination. Until there is a definitive finding about what was collectively owed when the bank obtained, through sheriff's sales, the properties known as Baldwin and Beacon Hill, it cannot be said when – or if – the bank was fully compensated. Accordingly, the mandate contained in Brunswick Bank II continues to impose on the trial court the obligation to ascertain what was owed; when that is determined, the Brunswick Bank II mandate obligates the trial judge to also determine whether – on application of the fair market value credits required by Brunswick Bank II

A-2929-20

– the bank obtained a windfall and, if so, the extent to which defendants are to be compensated as a result.

The bank also argued in its reconsideration motion – in claiming the parties and not this court may direct how the proceedings on remand will occur – that our prior, now withdrawn, opinion reveals that this court

> fail[ed] to recognize that the litigants always have the right to agree upon the manner in which their case and issues can go forward in the [trial] [c]ourt. Although this [c]ourt had remanded the matter with certain instructions, the parties could have simply settled the case in the entirety on their own terms. Instead, they chose to proceed within a framework that they agreed upon both as to legal issues and factual submissions.

This statement, like other similar statements in the bank's moving brief, is both relevant and true; unfortunately, what is true is not relevant and what is relevant is not true.

It is, of course, true that "the parties could have simply settled the case in the entirety on their own terms," as the bank says, and that would resolve the matter regardless of what we said in our prior decisions. But that's irrelevant because the parties have not settled their disputes. They continue to pursue a resolution of their disputes in our courts and, for so long as they do so, they and the trial court lack the power to disregard our directions.

A-2929-20

We also reject the bank's argument in its reconsideration motion that in determining the extent of defendants' indebtedness to the bank – one of the issues for which we remand – there remain "two critical components" to be decided in the trial court: " a) what interest rate would govern? and b) what were the [f]air [m]arket [v]alue credits, if any?" We reject the bank's contentions about whether or how these issues remain in play.

The first of these two questions concerns whether the bank is entitled to interest based on the rate contained in the loan documents or the rule-based rate. As we held in Brunswick Bank I, 440 N.J. Super. at 127, once the bank obtained its Law Division judgment on four of the five loans, interest thereafter accrued at the rate contained in Rule 4:42-11.[4] In the proceedings that follow today's mandate, the judge must ascertain the amount due on those loans based on this holding and nothing else. On the fifth loan, which was not

---

[4] It seems that the bank also believes that it may recoup prejudgment interest on the four loans that were reduced to a money judgment but which may not have been incorporated in that judgment. That is simply wrong. The bank had the opportunity to seek whatever monetary relief it believes was due when applying for the entry of judgment in the Law Division matter; it did not get to reserve aspects of its monetary claims against defendants on those four loans for consideration at a later date or in some other lawsuit. If something was omitted, the bank perhaps could have sought an amendment of its Law Division judgment – something it appears not to have attempted in the twelve years that have elapsed since its entry – but the bank no longer has the right to seek elements of monetary damage that it eschewed or omitted when applying for the entry of the Law Division judgment in 2010.

A-2929-20

a subject of the Law Division action, we note that a final judgment in foreclosure was entered on February 22, 2013; that judgment declared the bank was then entitled to $327,343.40 on that loan, as well as a counsel fee of $3,434.43. No particular amount of interest was expressed in that judgment despite blanks reserved in the document for that purpose, suggesting the bank either did not seek or apply for interest that had accrued up until the entry of that judgment or that the stated amount of $327,343.40 incorporated the interest that had accrued as of then. In either event, no interest accruing up until February 22, 2013, may be incorporated in the judge's finding as to the amount due, and any interest accruing after February 22, 2013, must be based on our court rules and not on any interest rate contained in the loan documents.

The second question was answered when the parties stipulated the fair market value of the relevant properties and by our Brunswick Bank II mandate, which was quoted earlier in this opinion and will not be repeated. The bank is free to disagree but, at the end of the day, the trial judge is not permitted to disobey. To the extent made relevant by awaited findings about the amount due the bank, defendants are entitled to fair market value credits for the properties described in Brunswick Bank II's mandate and if it is determined

15

that the bank recouped more than that to which it was entitled, the judge should require the disgorgement of that windfall to defendants.

* * *

To summarize, we remand for a precise finding of the amount owed to the bank on the date or dates relevant to the fulfillment of the <u>Brunswick Bank II</u> mandate. Once that finding is made, the trial judge must apply the stipulated fair market values of those properties precisely in the manner described in the <u>Brunswick Bank II</u> mandate. If the court determines the bank received more than one hundred percent of what is owed, then the court shall fix the amount to be disgorged to defendants as a consequence. If necessary, the court may conduct whatever additional proceedings are appropriate in seeking and reaching a fair and equitable resolution of the remanded issues so long as the trial judge adheres to the legal framework and principles contained in <u>Brunswick Bank I</u>, <u>Brunswick Bank II</u>, and today's decision. We lastly direct that the Assignment Judge or his designee reassign this matter to a different judge.

Reversed and remanded for further proceedings in conformity with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16